Argued and submitted May 16, judgment of conviction and sentence of death affirmed July 28, 2000

# STATE OF OREGON,
## *Respondent,*

*v.*

# HORACIO ALBERTO REYES-CAMARENA,
## *Appellant.*

## (CC 95CR2419FE; SC S44042)

7 P3d 522

David E. Groom, Public Defender, Salem, argued the cause for appellant. With him on the brief was Stephen J. Williams, Deputy Public Defender.

Robert B. Rocklin, Assistant Attorney General, Salem, argued the cause for respondent. With him on the briefs were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

DURHAM, J.

## DURHAM, J.

This criminal case is before the court on automatic and direct review of defendant's conviction for aggravated murder and sentence of death. *Former* ORS 163.150(1)(g), *repealed by* Or Laws 1999, ch 1055, § 1.[1] For the reasons that follow, we affirm the judgment of conviction and the sentence of death.

Defendant was employed as a foreman at a farm where the victim worked. Defendant agreed to drive the victim and her sister to a farm in Washington to find work. After defendant, the two women, and a male companion left the farm, defendant robbed and repeatedly stabbed the women, and left them beside rural roads in Douglas County. The victim died as a result.

In October 1996, a jury found defendant guilty of aggravated felony murder, first-degree robbery, and two counts of aggravated murder. In January 1997, after a penalty-phase proceeding in which the jury answered affirmatively the four death-penalty questions set out in ORS 163.150(1)(b), the trial court sentenced defendant to death. Defendant asks this court to reverse his conviction or, alternatively, to vacate the sentence and remand the case to the trial court for further proceedings.

## I. VIENNA CONVENTION ON CONSULAR RELATIONS

After defendant's arrest, police officers advised defendant of his *Miranda* rights in both English and Spanish, and he signed waivers in both languages. The police then interviewed defendant. The trial court admitted evidence of some statements that defendant made to the police.

In his first assignment of error, defendant argues that he is a Mexican citizen and that the court should have suppressed his statements to the police, because the state

---

[1] Judgments of conviction and sentences of death now are subject to automatic review in this court under ORS 138.012(1). In enacting ORS 138.012(1), the legislature renumbered the statute that described the court's review authority in death-penalty cases, but made no substantive change to that authority. That statutory change does not affect the analysis or disposition of this case.

obtained them in violation of the Vienna Convention on Consular Relations, *opened for signature* April 24, 1963, 21 UST 77, TIAS No 6820 ("VCCR"). Defendant reasons as follows. The VCCR is a treaty entered into by the federal government. *See* US Const, Art II, § 2 (President shall have power, subject to concurrence of two-thirds of the Senate, to make treaties). As such, under the Supremacy Clause of the United States Constitution, the VCCR is binding on state courts. US Const, Art VI. Article 36 of the VCCR requires designated authorities in signatory countries (1) to inform foreign consulates when police arrest or detain one of the citizens of the foreign country, (2) to allow communication between foreign consulates and their arrested or detained citizens, (3) to allow consulates to assist their citizens, and (4) to advise arrested or detained foreign citizens of their rights under the VCCR. The police in this case did not comply with the VCCR. In particular, the police did not inform the Mexican Consulate that defendant was in custody or inform defendant of his rights under the VCCR. Defendant argues that the trial court should have suppressed statements that he made to police as a remedy for those violations of the VCCR.

The state asserts a number of arguments in response to that assignment of error. First, the state contends that this court should not review the assignment, because the claim of error was not preserved. The state observes that defendant raised no issue regarding the VCCR in the trial court. Defendant did not move to suppress his statements, and neither he nor anyone else mentioned the VCCR at trial. The state further argues that the assignment is not subject to review under the plain error doctrine, because the legal point at issue is not obvious and the error does not appear on the face of the record. *See* ORAP 5.45(2) (unpreserved error of law may be considered on appeal if error is apparent on face of record). Next, the state contends that the record in this case is insufficient to establish that the VCCR applies. Third, the state argues that, if this court reaches the merits, then it should conclude, as have several federal courts, that the VCCR confers no rights that individuals may enforce. Fourth, the state contends that, to the extent that the VCCR confers individual rights, an individual

must establish prejudice to be entitled to relief, and defendant has not done so. Finally, the state argues that, even if defendant is entitled to relief under the VCCR, suppression of his statements to the police is not an appropriate remedy.

Defendant concedes that the claim of error was not preserved. Ordinarily, this court will not consider any matter assigned as error unless it was preserved in the lower court. ORAP 5.45(2); *see also State v. Stevens*, 328 Or 116, 123-24, 970 P2d 215 (1998) (defendant sought to exclude evidence as inadmissible profile evidence; court declined to consider whether evidence was inadmissible scientific evidence, because defendant did not preserve that issue); *State v. Montez*, 324 Or 343, 356, 927 P2d 64 (1996) (because defendant did not object to testimony on grounds asserted on appeal, claim of error not preserved). In this case, defendant raised no issue about the admissibility of his statements to police, let alone whether evidence of those statements was inadmissible because of asserted violations of the VCCR.

Even if a party fails to preserve a claim of error, appellate courts nonetheless possess discretion to consider it if it is plain error, also known as error "apparent on the face of the record." ORAP 5.45(2); *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990); *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381, 823 P2d 956 (1991). An appellate court may review unpreserved error as plain error if (1) it is an error of law, (2) the error is "obvious, not reasonably in dispute," and (3) it appears " 'on the face of the record,' *i.e.*, the reviewing court * * * need [not] go outside the record to identify the error or choose between competing inferences," and the facts constituting the error are irrefutable. *Ailes*, 312 Or at 381-82. Even if an appellate court concludes that an error is plain, it must exercise its discretion, explaining its reasons for doing so, to consider the claim of error. *Id.* at 382, 382 n 6 (stating nonexhaustive list of factors appellate court weighs when deciding whether to exercise discretion to consider plain error).

The state argues that any error here is not obvious, because courts that have considered similar issues have reached different conclusions. The state further argues that, even if the asserted error is plain, this court should exercise

its discretion against considering it, because the *Ailes* factors counsel against considering the error as plain error. Defendant does not attempt to counter the state's argument against plain error.

■     The asserted error here is not plain, because the legal point on which defendant relies is not obvious and reasonably is in dispute. No Oregon appellate court has considered the issue, let alone held that defendant's position is correct. Furthermore, the United States Supreme Court has not decided the issue. *See Van De Hey v. U.S. National Bank*, 313 Or 86, 95, 95 n 9, 829 P2d 695 (1992) (only decisions of United States Supreme Court are binding on this court in interpretation of federal law). The only pertinent Supreme Court case is *Breard v. Greene*, 523 US 371, 118 S Ct 1352, 140 L Ed 2d 529 (1998). *Breard* is a habeas corpus case in which the petitioner argued that the Court should overturn his conviction and sentence because of alleged violations of the VCCR. The Court held that, because the petitioner had not raised the claim in state court, he had lost any claim under the VCCR. 523 US at 375. Accordingly, the only Supreme Court holding that addresses a claim under the VCCR does not establish that defendant here was entitled to suppression of his statements to police because of an alleged VCCR violation.

■     Other discussion of the VCCR in *Breard* is equivocal and does not help defendant satisfy the plain error rule. For example, as the state observes, to prevail on his VCCR claim, defendant must establish that the VCCR creates individual rights. The *Breard* Court referred to that issue in passing, noting: "The Vienna Convention—which *arguably* confers on an individual the right to consular assistance following arrest—has continuously been in effect since 1969." *Id.* at 376 (emphasis added). Even if that statement were necessary to the holding in *Breard*, it is insufficient to permit this court to conclude that the claimed individual right *plainly* exists.[2]

---

[2] In addition, this court "ordinarily * * * respect[s] the decisions of lower federal courts on issues of federal law," although this court is not bound by them. *State v. Moyle*, 299 Or 691, 707, 705 P2d 740 (1985). We observe that at least one lower federal court decision manifestly is contrary to defendant's position. In *U.S. v. Lombera-Camorlinga*, 206 F3d 882, 888 (9th Cir 2000), an en banc Ninth Circuit Court of Appeals held:

Defendant argues that, even if he failed to preserve any claim of error and the error is not plain, this court nevertheless should consider his VCCR argument. He presents three reasons:

"[T]his issue is largely unexplored throughout the United States. * * * Relationships with foreign countries depend on the court rulings on this issue. In addition to that, this defendant's life depends on Oregon's treatment of this issue."

For the following reasons, we disagree.

■       Defendant's first reason—the lack of precedent on the meaning and effect of the VCCR—actually militates against considering the unpreserved VCCR issue as plain error. Significant disputes regarding the VCCR persist because no pertinent legal authority has resolved them. *See Ailes*, 312 Or at 381 (unpreserved error not considered "plain" if legal point disputed). Second, defendant has not persuaded us that the diplomatic issues to which he alludes are sufficiently real or significant to overcome the important considerations that undergird the preservation doctrine. *See State v. Hitz*, 307 Or 183, 188, 766 P2d 373 (1988) (rules pertaining to preservation of error are intended to advance goals such as ensuring that positions of parties are presented clearly to initial tribunal and that parties are not taken by surprise, misled, or denied opportunities to meet an argument). Finally, this court applies the preservation of error principles discussed above uniformly in all cases, including capital cases. *See, e.g., State v. Barone*, 329 Or 210, 242, 986 P2d 5 (1999) (declining to consider unpreserved claim of error in death-penalty case).

Any claim of error with regard to defendant's statements to police was not preserved. Any error attributable to

"The language of the Vienna Convention and its operation over the last 30 years support the government's position that a foreign national's post-arrest statements should not be excluded solely because he made them before being told of his right to consular notification."

Not only would that holding undercut the substance of defendant's argument, were we to reach it, but it demonstrates that the legal point that the court should suppress statements if the police obtain them before VCCR notification is not "plain."

violation of the VCCR is not plain error. We decline to consider defendant's first assignment of error.

## II. DISCOVERY

■       Before trial, defendant moved to require the state to provide discovery. In paragraph 24 of his written motion, defendant sought discovery of "the name and case number of every capital murder trial in Oregon in which the expert has testified for the prosecution about the future dangerousness issue." The trial court denied that request.

Defendant assigns error to that denial, contending that he sought discovery relevant to "proportionality review."[3] Defendant explains that he sought the identified documents to show that the manner in which the state charges criminal defendants with aggravated murder and seeks the death penalty is arbitrary and capricious. He also contends that juries in Oregon do not impose the death penalty in a consistent manner. Finally, he argues that evidence that the state has filed aggravated murder charges and obtained death sentences in an arbitrary manner is "exculpatory" evidence that the state must disclose to defendant under *Brady v. Maryland*, 373 US 83, 83 S Ct 1194, 10 L Ed 2d 215 (1963), and various provisions of the state and federal constitutions.

The state first argues that defendant failed to preserve that claim of error. Defendant does not address whether he preserved this assignment of error at trial.

■       The requirement of preservation of error ensures that the trial court will have an opportunity to consider the pertinent issue and to correct an asserted legal error without the need for an appeal. *See Brown*, 310 Or at 356 (reasons for preservation rule are to allow adversary to present its position and to permit trial court to understand and correct any error). On appeal, our task is to determine whether defendant preserved at trial his claim that the trial court erred by refusing to require the state to provide the information that he sought. Defendant contends that "defendant's pretrial motion * * * would, in essence, have required the trial judge

---

[3] We continue to question the propriety of using the term "proportionality review" in this context. *See State v. Cunningham*, 320 Or 47, 64 n 16, 880 P2d 431 (1994) (so stating).

to undertake a proportionality review of the imposition of the death penalty throughout the State of Oregon."

Defendant's written motion sought identifying information about capital cases in which future dangerousness was at issue. That request did not inform the trial court that defendant actually wanted information about the state's charging decisions or the results of jury verdicts in aggravated murder cases to establish arbitrariness of the kind that he describes on appeal. The reference to expert testimony and the phrase "the future dangerousness issue" in defendant's discovery motion indicate that the apparent objective of that motion did not resemble the discovery purposes that he now asserts on appeal.

Neither was defendant's argument at the hearing on the motion sufficient to present to the trial court the issues that defendant raises on appeal. At that hearing, the following colloquy occurred:

"[The state]:   * * * There are, of course, some objections having to do with—I believe there was a request in there having to do with prior death penalty prosecutions and the State providing that to the defense. I have no objection to the Court entering an order that we comply with the discovery statutes and provide all police reports. * * * The only thing I would object to, of course, has to do with other prosecutions.

"[Defendant]:   I think *State vs. Cunningham* discusses that. I wouldn't expect the trial court to disagree with the Supreme Court. So unless the issue has federal validity I am not going to push it any further.

"The Court:   You mean you would want a copy of all previous capital case records pertaining to any other death penalty cases in Douglas County as well as other counties in —

"[Defendant]:   Yes. That motion has been filed in a lot of cases. I think the Supreme Court addressed it in *State vs. Cunningham*. As I say unless —

"The Court:   Yeah, I remember it was raised in *Cunningham.*

"[Defendant]:   I'm not going to push it beyond what's in the paperwork because for purposes at this point the Supreme Court addressed the question."

In that colloquy, defendant conceded that, in *State v. Cunningham*, 320 Or 47, 880 P2d 431 (1994), this court affirmed the denial of the defendant's request for certain records in other death-penalty prosecutions. Defendant further conceded that he knew that the trial court would follow this court's decision in *Cunningham* and deny any request by him for discovery of similar records on that basis. Defendant did not state—as he now attempts to argue on appeal—that *Cunningham* was wrongly decided or that some other reason justified his request. Defendant did not hint that he wanted the court to examine the issues regarding death-penalty prosecutions that he raises on appeal. If defendant was attempting to extend the scope or purpose of his request beyond the four corners of his written motion, then he did not make that position clear to the trial court. In fact, defendant stated that he was "not going to push it beyond what's in the paperwork * * *." That statement indicated to the trial court that defendant wished to pursue only his written motion. As we have determined above, the written motion did not preserve the claim of error that defendant seeks to raise on appeal. Because defendant's claim of error under this assignment was not preserved, we decline to consider it.

## III.   SYMPATHY INSTRUCTION

Defendant contends that the trial court erred in not giving his requested jury instruction as follows:

"A decision to grant HORACIO REYES CAMARENA mercy does not violate the law. The law does not forbid you from being influenced by pity for HORCIO [*sic*] REYES CAMARENA and you may be governed by mere sentiment and sympathy for HORACIO REYES CAMARENA in arriving at a proper penalty in this case.

"You need not find the existence of any mitigating fact or circumstance in order to return a sentence of less than death. You may consider any aspect of defendant's life in your determination on the fourth question and any aspect of defendant's life that may be relevant in your determination of the first three questions. Defendant need not prove the existence of a mitigating circumstance beyond a reasonable doubt. If you reasonably believe that a mitigating circumstance exists, you may consider it as established."

Defendant argues that juries are entitled to consider mercy and sympathy in their deliberations and, accordingly, that the trial court should have given his requested instruction. The state responds that this court previously has upheld a decision not to give an instruction nearly identical to the first part of the instruction requested here. As to the second part, the state contends that the trial court adequately instructed the jury on the same issue using different words.

We review a trial court's refusal to give a requested jury instruction for errors of law. *State v. Moore*, 324 Or 396, 427, 927 P2d 1073 (1996).

In *Moore*, the trial court refused to give the following instruction requested by the defendant:

"A decision to grant [the defendant] mercy does not violate the law. The law does not forbid you from being influenced by pity for [the defendant] and you may be governed by sentiment and sympathy for [the defendant] in arriving at a proper penalty in this case.

"You need not find the existence of any mitigating fact or circumstances in order to return a sentence less than death."

This court held that the trial court did not err in refusing to give that instruction, because it was not a correct statement of the law. *Id.* at 427-28. That instruction is identical to the first part of the instruction that defendant challenges in this assignment of error. Defendant does not contend that *Moore* was decided incorrectly. Because defendant's requested sympathy instruction, considered in its entirety, did not state the law correctly in all respects, the trial court did not err in refusing to give that sympathy instruction regardless of whether the instruction was correct in part. *See, e.g., Hernandez v. Barbo Machinery Co.*, 327 Or 99, 106, 957 P2d 147 (1998) (trial court does not err in refusing to give requested instruction that is not correct in all respects).

## IV. FUTURE DANGEROUSNESS INSTRUCTION

Defendant next contends that the trial court erred in not giving his requested jury instruction on future dangerousness as follows:

" 'Criminal acts of violence' refers to a relatively narrow range of acts characterized by the application or overt threat of force which have the potential for inflicting bodily injury on another person."

The trial court gave the following instruction:

"The second question asked by the law is, is there a probability, meaning is it more likely than not, that the Defendant would commit criminal acts of violence that would constitute a continuing threat to society. 'Criminal acts of violence' refers to acts characterized by the application of force which has the potential for inflicting bodily injury on another person or the overt threat of such force."

Defendant's requested jury instruction defined "criminal acts of violence" as "a relatively narrow range of" acts, while the instruction given by the trial court did not contain that phrase. Defendant argues that the trial court erred by refusing to include that phrase in its instruction, relying on *State v. Huntley*, 302 Or 418, 428, 730 P2d 1234 (1986), in which this court addressed the meaning of the term "dangerousness of the defendant" in ORS 161.725, the dangerous offender sentencing statute.

This court rejected an argument similar to defendant's in *State v. Tucker*, 315 Or 321, 336-37, 845 P2d 904 (1993). Defendant does not argue that *Tucker* was decided incorrectly. We follow *Tucker* and conclude that the trial court did not err in refusing to give the future dangerousness instruction proposed by defendant.

## V. PRESUMPTION INSTRUCTION

Defendant next contends that the trial court erred in not giving his requested jury instruction as follows:

"The law presumes that the defendant will not commit criminal acts of violence in the future. That presumption stays with the defendant unless and until the probability of his commission of acts of criminal violence is proven beyond a reasonable doubt. The burden is upon the State to prove the probability of the defendant committing criminal acts of violence in the future."

Defendant argues that the trial court erred in declining to give his requested instruction, because a defendant is presumed to be peaceable, even after a guilty verdict, and "to suggest otherwise would improperly shift the burden of persuasion on the sentencing issues."

The state argues that this court has held that a presumption instruction of the kind requested here is not required. *See, e.g., State v. Douglas*, 310 Or 438, 451, 800 P2d 288 (1990) (presumption of peaceableness instruction not required). Defendant does not argue that *Douglas* and similar cases were decided incorrectly. The trial court did not err in refusing to give the presumption instruction that defendant requested.

## VI.   CONSTITUTIONALITY OF DEATH PENALTY

Finally, defendant assigns error to the trial court's rejection of his contention that Oregon's statutory death-penalty scheme is unconstitutional in a number of respects. He concedes that this court has rejected the same challenges in previous death-penalty appeals. That concession is well taken. *See State v. Hayward*, 327 Or 397, 414, 963 P2d 667 (1998) (declining to discuss such challenges, because it would not benefit bench or bar in light of previous holdings); *Moore*, 324 Or at 429 n 19 (same).

## VII.   CONCLUSION

For the foregoing reasons, we conclude that none of defendant's assignments of error provides a basis for reversal.

The judgment of conviction and the sentence of death are affirmed.