Argued and submitted March 25, affirmed April 30, petition for review denied July 10, 2014 (355 Or 751)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## ROGER RONALD CORKILL,
*Defendant-Appellant.*

Marion County Circuit Court
12C40217; A152738

325 P3d 796

Kyle Krohn, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Carson L. Whitehead, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

HADLOCK, J.

## HADLOCK, J.

Defendant appeals a judgment of conviction for driving under the influence of intoxicants (DUII), in violation of ORS 813.010, and for unlawfully refusing to take a breath test, in violation of ORS 813.095. In a single assignment of error, he argues that the trial court erred "by permitting the prosecutor to ask defendant [during cross-examination] whether the police officer witnesses were lying." Defendant acknowledges that he did not object to the prosecutor's line of questioning and concedes that the argument he raises on appeal is not preserved. Nonetheless, he asks us to reverse his convictions and remand for a new trial on the ground that the trial court plainly erred by failing to exclude the testimony, despite the lack of any defense objection. We disagree with defendant's contention that the trial court had a duty, in the circumstances present here, "to *sua sponte* preclude the prosecutor from asking whether prosecution witnesses were lying." Accordingly, defendant's unpreserved argument presents no basis for reversal.

In evaluating whether the trial court plainly erred by not interrupting the prosecutor's cross-examination of defendant, we must consider the entire context in which the challenged questions were asked. Accordingly, we describe the trial proceedings in some detail.

In his opening statement, the prosecutor outlined the evidence that the state planned to use to establish that defendant had driven while intoxicated, including evidence that defendant had been driving westbound in the eastbound lane of State Street in Salem shortly after 2:00 in the morning, that defendant exhibited various signs of intoxication, that defendant made inculpatory statements during the stop and subsequent arrest, and that defendant refused to take a breath test. Defense counsel's opening statement asked the jury to pay close attention to the evidence and informed the jury that defendant planned to testify and would tell the jurors "what his recollection of things was as opposed to the police officer's recitation of the—in their testimony."

The trial testimony largely reflected what the lawyers had anticipated in their opening statements. Sergeant

Burnham testified that, at 2:00 a.m. on January 1, he was on patrol when he saw a car traveling westbound on State Street in the eastbound lanes, at a point where the lanes are separated by "a physical divider" and a sign "tell[s] cars to go to the right of that divider." Burnham stopped defendant for driving the wrong way and asked defendant for his license, registration, and proof of insurance. Burnham also asked defendant if he had consumed any alcohol. Burnham testified that defendant handed over his license and then asked what else Burnham needed; as defendant spoke, Burnham smelled alcohol on his breath. Burnham also testified that defendant was having difficulty responding to more than one question at a time, his movements were very slow, and Burnham suspected that he was under the influence of alcohol.

Because Burnham was the shift supervisor and tried "not to be tied into an investigation," he called other sheriff's deputies to the scene. Deputy Clarke responded and approached defendant, who still was seated in his car. Clarke testified that defendant's eyes were bloodshot and watery, that his speech was slurred to the point of incoherence, and that he acknowledged having drunk alcohol that evening. Clarke asked defendant if he would perform field sobriety tests; at that point, according to Clarke, defendant "asked if [Clarke] could just follow him home," saying that if Clarke "followed him home he would be fine, because then he would be home." Clarke asked again if defendant would perform field sobriety tests, and he agreed, although he asserted that he "had balance issues" and "wasn't able to keep his balance even when he is sober." Clarke testified that, in response, he told defendant that he would "just do the one test, which is the eye test," and defendant "was okay with that."

Clarke testified that defendant had such difficulty balancing once he got out of his car that Clarke feared defendant would fall and "asked him to just lean up against the car so he wouldn't fall over." Even leaning against the car, defendant had "an upper body sway." Clarke administered the horizontal gaze nystagmus test to defendant and testified that he observed four out of six clues of intoxication.

Finally, Clarke testified, he asked defendant "where he would rate himself on [an intoxication] scale from one to ten," where a rating of "one" would be "stone sober, nothing to drink, and ten being [the] most drop down drunk he had ever been." Defendant's "first response was, well, I am not crawling down the road." Clarke repeated the question and, he testified, defendant responded, "I am busted." According to Clarke, defendant then "started blaming the bar that he was at, and the bartender, thinking that they should get in trouble for allowing him to drive home the way he was." Defendant then was arrested for driving under the influence, at which point he "became very irate, began yelling, screaming, threatening, and that continued" while Clarke and another deputy walked defendant over to a patrol car. Clarke testified that defendant's yelling continued during the drive to the jail, where defendant gave a "colorful answer" when Clarke asked him if he would take a breath test; Clarke interpreted that response as a refusal.

After Burnham and Clarke testified, defendant took the stand and testified about the night in question. Defendant stated that he had driven to the airport at about midnight to watch fireworks and sat there for a couple of hours. Defendant left the airport at about 2:00 a.m., then went to a bar where, he testified, he drank only half of one beer. Defendant testified that he then left the bar because it was getting late. He acknowledged that he drove the wrong way on State Street, but explained that he had been confused, thinking that the concrete street divider was not a lane divider (which should be on his left), but the sidewalk (which should be on his right). Defendant testified that he immediately realized that he was driving the wrong way and—"just when [he] was getting ready to pull in" to a parking lot—he saw flashing lights, so pulled in and sat "waiting for the officer to arrive."

Defendant testified that the officer who approached him asked if he knew why he had been pulled over, and that is when defendant said, "I am busted," referring to having driven the wrong way, not to being intoxicated. Defense counsel then asked if defendant had heard the officers' testimony earlier in the day (regarding their encounter

with defendant), and defendant responded that he had. Defendant denied that he had had any trouble retrieving his documents; he testified that he "pulled everything out real quick" and "had everything [the officer] needed right there." Defense counsel then asked, "[W]hen the officer also said that you were talking about the bartender, do you recall that?" Defendant responded that he had "only seen her [the bartender] for half a second" because she gave him "one beer and that was it." Defense counsel continued to ask defendant questions that were phrased in terms of how the law enforcement officers had testified earlier in the trial:

"Q. And now let's talk about—you heard the testimony from Deputy Clarke here today, correct?

"A. Yes.

"Q. And he described you and your behavior. *Do you agree that that was what your behavior was*?

"A. No, I do not.

"* * * * *

"Q. You heard the testimony from Deputy Ryan today about taking you to the jail. Do you recall that?

"A. Yes.

"Q. *And at any time did you tell him the colorful language that was described?*

"A. No, I did not.

(Emphasis added.) Defendant also denied having had any alcohol to drink that night other than "half a beer" and denied having been impaired by alcohol.

Only after defense counsel elicited the testimony described above did the prosecutor ask the cross-examination questions to which defendant belatedly objects. The pertinent part of the cross-examination started with this exchange between the prosecutor and defendant:

"Q. Okay. And you told the officer you had—I will get what you said to him. I don't want to misquote. Some drinks and then a soda. And then another time you said you had a few drinks, and then you said you were drinking beer.

"A.   *That is not a true statement. I did not tell him that.*

"Q.   *The officer is making that up?*

"A.   He must be, or he misunderstood, because I said I had half a beer. \* \* \*"

(Emphasis added.) After some further questioning on other topics, the prosecutor asked defendant about his testimony that he had immediately told the first officer who came up to his car that he "was busted" (purportedly in reference to having driven down State Street the wrong way, as compared to later telling another officer that he "was busted" in reference to having driven while intoxicated), and the prosecutor noted that the first officer had not testified that defendant made any such statement at that point in time:

"Q.   Okay. And then you heard Sergeant Burnham come in here and testify. He was the first deputy. He never mentioned you telling him that you were busted.

"A.   Was he the one that first came to the window?

"Q.   Yes.

"A.   Oh, well.

"Q.   *So he is lying, too?*

"A.   Maybe he don't remember. I remember him saying a lot of things he didn't remember.

"Q.   Okay. And your testimony is that you never said anything about, well, I am not crawling on the ground?

"A.   I never said anything like that.

"Q.   *Deputy Clarkee was lying?*

"A.   Or he made it up, surely. I suppose.

"Q.   All right. *And then also that Sergeant Burnham lied about the paperwork,* that you just grabbed it real quick from your wallet and from where it is in your car?

"A.   He didn't say I grabbed it real quick. He said he was—

"Q.   No, you said that. You said you just grabbed it right quick and handed it to him.

"A.   I got my insurance papers first, pulled my wallet out, and handed it to him.

"Q.   Okay. *So he was lying about that as well?*

"A.   I am going to say definitely."

(Emphasis added.) The prosecutor asked additional questions apparently aimed at highlighting the differences between defendant's testimony and that given by the officers, but most of those later questions did not as explicitly ask defendant to opine on whether the officers had lied. The prosecutor wrapped up cross-examination of defendant, however, by asking whether defendant's testimony was "that these officers are lying" and defendant answered affirmatively. Defendant did not object to any of those questions.

On redirect examination, defense counsel asked defendant about his testimony that the officers had lied, apparently attempting to get defendant to agree that, instead, the officers may have been "just mistaken." Defendant did not entirely agree, however, and stated that, in his opinion, "some of the things they said were a lie." Defendant was the last witness. After hearing closing arguments and jury instructions, the jurors deliberated and returned a unanimous verdict of guilty on the DUII charge. The trial court then found defendant guilty of refusing the breath test.

On appeal, defendant argues that the prosecutor's cross-examination of defendant "elicited improper vouching testimony," as it invited defendant to offer an opinion on the testifying officers' truthfulness. Defendant relies on *State v. Isom*, 306 Or 587, 761 P2d 524 (1988), in which the Supreme Court emphasized that no witness may be asked to give an opinion on whether another witness is telling the truth. *Id.* at 591-92. In *Isom*, the court explained that the prohibition applies to circumstances in which a prosecutor cross-examines a defendant in a criminal case by asking whether a law enforcement officer "would * * * be lying" if he described facts differently than the defendant had. *Id.* at 590-91.

Defendant acknowledges that he did not object to the prosecutor's questions on the ground that they improperly sought to elicit his opinion on the officers' truthfulness. However, based on his contention that the prosecutor's questioning was improper under *Isom*, defendant argues that the

trial court plainly erred by not intervening, *sua sponte,* to prevent the prosecutor from "repeatedly ask[ing] defendant whether the officers were lying." Defendant asks us to exercise our discretion to correct that error, pointing to other cases in which, he asserts, we have "reversed * * * based on trial courts' unpreserved errors in allowing comments on witnesses' credibility." Defendant relies particularly on *B. A. v. Webb,* 253 Or App 1, 10-17, 289 P3d 300 (2012), *rev den,* 353 Or 428 (2013), a tort case in which we held that the trial court plainly erred by not excluding testimony from a mental-health counselor and a psychosexual evaluator that the plaintiff was a victim of childhood sexual abuse and that her reports of that abuse were credible.

In response, the state acknowledges that "one witness may not comment on the credibility of another witness." Nonetheless, the state argues that we should not reverse defendant's conviction for two reasons. First, the state contends, defendant invited any error by "volunteer[ing] his belief that police officers were not truthful in their testimony prior to the prosecutor asking him about the officers' credibility" and then revisiting the issue on redirect examination. Second, the state argues that we should "decline to address defendant's claim because the error was harmless." In that regard, the state asserts that the alleged harm in this case—that *"defendant's* comments about the credibility of the state's witnesses could have caused the jury to view his own testimony as less credible"—is different from the harm associated with a more "typical" vouching case, in which the risk is "that the jury might believe the credibility assessment of the expert or police officer [who testifies regarding the credibility of another witness] and not exercise independent judgment." (Emphasis in original.)

We agree with the state that the challenged testimony in this case differs materially from the kind of testimony that, we have held, a trial court is obligated to exclude *sua sponte.* In our view, however, that difference does not matter only to a harmless-error analysis. Rather, it also informs our analysis of whether the trial court committed plain error in the first place.

We may review an unpreserved claim of error if that error is "plain," that is, if (1) the error is one of law, (2) the error is "obvious, not reasonably in dispute," and (3) the error "appears on the face of the record," so that we need not "go outside the record to identify the error or choose between competing inferences, and the facts constituting the error are irrefutable." *State v. Reyes-Camarena*, 330 Or 431, 435, 7 P3d 522 (2000) (internal quotation marks omitted). In determining whether those criteria are met, it is critical to identify the exact nature of the error that the trial court purportedly committed. When, as here, the claimed "plain error" is associated with a trial court not having *sua sponte* interrupted a line of questioning (or not having excluded the resulting evidence *sua sponte*), the existence of any error does not depend solely on whether—as an abstract matter— the lawyer's questions or the elicited answers would have been inadmissible if they had been objected to. Rather, any "plain error" must relate to the trial court having not taken affirmative steps to intervene in the parties' litigation. We recently addressed that point in a case in which the appellant argued that the trial court should have *sua sponte* excluded a nurse practitioner's testimony that a complainant's statements were "highly concerning for sexual abuse":

> "On appeal, defendant vaguely asserts that the 'admission of the diagnosis' was error and that 'the trial court should have excluded [the testimony].' In this case, however, the trial court did nothing to admit the challenged portion of [the nurse practitioner's] testimony; because no objection was made, the trial court did not make a ruling on the admissibility of that testimony. If there was error, then, it was necessarily based on the trial court's inaction—*i.e.*, the trial court's failure to strike the testimony *sua sponte* when [the nurse practitioner] offered it on cross-examination."

*State v. Ramirez-Estrada*, 260 Or App 312, 316, 317 P3d 322 (2013), *rev den*, 355 Or 317 (2014).

Thus, the question before us in this case is not whether the prosecutor's cross-examination of defendant was objectionable. Rather, the pertinent question is whether the trial court plainly erred by not interrupting the prosecutor's cross-examination of defendant *sua sponte*.

In answering that question, we first ask whether the claimed error is one of law that is "obvious, not reasonably in dispute." *Reyes-Camarena*, 330 Or at 435. We start from a straightforward proposition on which the parties agree. In ordinary circumstances, one witness may not be asked to give an opinion on whether another witness is lying. Moreover, under *Isom*, that principle applies not only to the kinds of law-enforcement, medical, and other expert witnesses whose testimony regarding credibility often is at issue in "vouching" cases, but also to testimony given by the defendant in a criminal case, who should not be asked whether other witnesses have been truthful. 306 Or at 590-91. Thus—at least in most circumstances—it is beyond dispute that such questioning is objectionable, and that any responsive testimony commenting on the credibility of another witness would be inadmissible if it were objected to. That does not necessarily mean, however, that it is beyond dispute that a trial court must always intervene *sua sponte* to prevent that kind of evidence from reaching the jury. To the contrary, the cases in which we have held that trial courts are obligated to exclude evidence in the absence of an objection—and plainly err if they do not—all share an important characteristic that is not present here.

Each of the cases in which we have held that a trial court should have excluded evidence *sua sponte* (perhaps necessarily suggesting that the court also has a *sua sponte* obligation to interrupt a lawyer's questions that seek to elicit such testimony) has involved true "vouching" evidence, that is, one witness's testimony that he or she believes that another witness is or is not credible, which a party offers to bolster or undermine the veracity of that other witness. *See, e.g., State v. Higgins*, 258 Or App 177, 308 P3d 352 (2013), *rev den*, 354 Or 700 (2014) (plain error for trial court not to exclude mother's testimony that she "knew for sure" that her daughter was not lying when the daughter said that the defendant had raped her); *B. A.*, 253 Or App at 10-17 (plain error for trial court not to exclude testimony from mental-health professionals that the plaintiff's reports of abuse were credible); *State v. Lowell*, 249 Or App 364, 366-67, 277 P3d 588, *rev den*, 352 Or 378 (2012) (trial court plainly erred by allowing a detective to comment directly on the defendant's

credibility by stating that he did not think the defendant "was being very honest and upfront" and that, based on his classroom training and experience, he understood the defendant's statements to be of a type that indicates "that somebody is not being truthful"). That kind of testimony impermissibly "invade[s] the jury's role as the sole judge of the credibility of another witness." *State v. Charboneau*, 323 Or 38, 47, 913 P2d 308 (1996). Often, it creates a "risk that the jury will not make its own credibility determination, which it is fully capable of doing, but will instead defer" to an expert's opinion on that point. *State v. Southard*, 347 Or 127, 141, 218 P3d 104 (2009).

This case does not present the same kind of "vouching" concerns as the cases cited above, which all involved a risk that jurors would rely on witnesses' opinions about the credibility of an alleged victim to avoid their independent obligation to determine whether the complainant's allegations were truthful. Here, in asking defendant whether the officers had lied, the prosecutor was not similarly inviting the jurors to abdicate their responsibility to determine the officers' credibility and, instead, rely on defendant's opinion about their veracity. Put differently, the credibility *of the officers* was not the point of the prosecutor's cross-examination of defendant. Rather, the prosecutor sought to undermine the credibility *of defendant* by contrasting his version of the pertinent events with the officers' testimony on the same topics, and by getting defendant to acknowledge that, if his own testimony was true, the officers must be lying. We are not aware of any case holding that a trial court is obligated to intervene *sua sponte* in that kind of situation, where the point of the questions is not to elicit "vouching" testimony to bolster or undermine a different witness's testimony, but instead is directed at undermining the credibility of the witness who is presently on the stand. *Cf. State v. Sanchez-Jacobo*, 250 Or App 621, 631, 282 P3d 880 (2012), *rev den*, 353 Or 280 (2013) ("[A] witness does not impermissibly 'vouch for' or 'bolster' his or her *own* testimony by proclaiming truthfulness." (Emphasis in original.)). Because there are no cases on point, and because it is not "obvious" that the concerns that form the basis for a trial court's duty to *sua sponte* exclude true vouching evidence extend to the kind of

questioning at issue here, we cannot say that the trial court plainly erred by not interrupting the prosecutor's cross-examination of defendant in this case.

Affirmed.