Submitted December 19, 2017, affirmed December 26, 2019, petition for review denied May 7, 2020 (366 Or 451)

BRUCE E. WALDORF,
*Petitioner-Appellant,*

*v.*

Jeff PREMO,
Superintendent,
Oregon State Penitentiary,
*Defendant-Respondent.*

Marion County Circuit Court
14C18923; A161591

457 P3d 298

Petitioner appeals a judgment denying his petition for post-conviction relief, arguing that he received inadequate and ineffective assistance of counsel. Specifically, petitioner argues that his trial counsel failed to object when a detective testified in a manner that petitioner contends amounted to impermissible comments on his credibility. *Held*: The post-conviction court did not err. Petitioner did not establish that all attorneys exercising reasonable professional skill and judgment would have objected to or otherwise sought to exclude the detective's testimony.

Affirmed.

Linda Louise Bergman, Senior Judge.

Jason Weber and O'Connor Weber LLC filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Greg Rios, Assistant Attorney General, filed the brief for respondent.

Before DeHoog, Presiding Judge, and Egan, Chief Judge, and Aoyagi, Judge.

DEHOOG, P. J.

Affirmed.

## DEHOOG, P. J.

Petitioner, who was convicted of first-degree sexual abuse following a jury trial, appeals a judgment denying his petition for post-conviction relief. In a single assignment of error, petitioner identifies three instances in which the detective who interviewed petitioner was permitted to testify, without objection by petitioner's trial counsel, in a manner that petitioner argues impermissibly commented on his credibility. Petitioner contends that trial counsel's failure to object or move to strike in each of those instances constituted inadequate and ineffective assistance of counsel, and that the post-conviction court erred in denying his petition for relief on that ground. Writing to address two of the three instances of trial counsel's allegedly deficient performance, we conclude that, even if the identified testimony was objectionable "vouching" testimony, petitioner did not establish that all attorneys exercising reasonable professional skill and judgment would have objected to that testimony or otherwise sought to exclude it. As a result, the post-conviction court did not err in denying petitioner's claim for relief, and we, therefore, affirm.

We review the grant or denial of post-conviction relief for legal error. *Alne v. Nooth*, 288 Or App 307, 308, 406 P3d 109 (2017). We accept the post-conviction court's express and implicit findings of fact if there is evidence in the record to support them. *Id.* We state the facts in accordance with that standard.

The underlying allegations of sexual abuse arose from an incident involving petitioner and J, the 10-year-old friend of one of petitioner's granddaughters. Petitioner drove two of his granddaughters and J from Springfield to Corvallis to watch a high school basketball tournament. According to J, while she and petitioner were alone in the car after the tournament, he tickled her leg. He then moved his hand up her leg until the back of his thumb touched her vagina on the outside of her clothing. J told him to stop, moved his hand away, and got out of the car. Shortly thereafter, all three girls returned to the car, and petitioner drove them home.

Based on that incident and the related investigation, petitioner was indicted for first-degree sexual abuse and, after a jury trial, convicted of that offense.[1] Petitioner appealed his conviction, and we affirmed without opinion. Petitioner then filed this action for post-conviction relief raising numerous claims, all of which the post-conviction court denied. Petitioner now appeals, assigning error only to the post-conviction court's denial of relief on his claim of inadequate and ineffective assistance of counsel under Article I, section 11, of the Oregon Constitution, and the Sixth and Fourteenth Amendments to the United States Constitution.

On appeal, as in the post-conviction court, petitioner identifies three statements to which, he contends, his trial attorney should have responded by objecting or moving to strike. Each statement was made by Martin, the detective who had interviewed petitioner in the course of investigating J's allegations. We discuss only the second and third of those statements.[2] In the second statement, made by Martin on direct, he testified that he had "found it curious" that petitioner could recall certain facts from the day in question, but that he did not recall "an issue that in [Martin's] opinion he would have remembered, like touching a ten-year-old girl's vagina." According to petitioner, that testimony effectively told the jury that, in Martin's opinion, petitioner was a liar and his denial of J's accusation could not be believed. That, petitioner contends, constituted an impermissible comment on his credibility to which any competent attorney would have objected.

Martin made the third statement while being cross-examined by petitioner's trial counsel about the interview. In response to counsel's suggestion that petitioner's conduct—putting his head in his hands and saying "Oh,

---

[1] Below we discuss an investigative interview of petitioner and the state's reliance on a detective's account of that interview at petitioner's criminal trial.

[2] In the first statement identified by petitioner, Martin testified during direct examination that, when petitioner had used the word "touch" in telling Martin that he did not recall touching J, Martin had understood him to mean a "sexually motivated touch." Petitioner contends that the statement was akin to Martin having told the jury that petitioner had confessed to the alleged crime. We reject that aspect of petitioner's assignment of error without further discussion.

God, Oh God"—had nothing to do with whether he had sexually assaulted J, Martin testified, "Well, if he'd done nothing wrong[,] I found his behavior to be completely out of character." Martin further testified that, if he himself had been accused of something that he had not done, he would not ask for forgiveness or try to strike a bargain, as petitioner had done during the interview; he would instead say that he had done nothing wrong. Petitioner characterizes that testimony as Martin "expressly offering his opinion that petitioner was acting like a person who was guilty."

The superintendent responds that petitioner failed to demonstrate that his trial attorney's performance was constitutionally deficient in regard to either of those aspects of Martin's testimony. As to the first instance, the superintendent argues that Martin's statement that he "found it curious" that petitioner did not recall whether he had touched J was not offered as evidence that Martin found petitioner untrustworthy; rather, that testimony provided context for his description of petitioner's conduct—holding his head and saying, "Oh, God." *See State v. Chandler*, 360 Or 323, 335-36, 380 P3d 932 (2016) (trial court's admission of portions of investigative interview in which a detective repeatedly indicated that she believed the alleged victim over the defendant was not error; evidence provided context for defendant's statements in interview and was not offered as evidence that detective found the defendant unbelievable). As to the second instance, the superintendent argues that, even if Martin's statement is properly considered "vouching" testimony, trial counsel reasonably did not object to it. The superintendent reasons that, because counsel elicited that response during cross-examination, either he invited the response and so *could* not object to it, or it would at least have been reasonable for counsel to believe that he could not object to it under those circumstances. Either way, the superintendent argues, counsel's decision not to object did not fall below constitutionally required standards.

To succeed on his claim of inadequate assistance of counsel under Article I, section 11, petitioner must prove, by a preponderance of the evidence, that trial counsel did not exercise reasonable professional skill and judgment and

that petitioner suffered prejudice as a result of counsel's inadequacy. *Alne*, 288 Or App at 312. The requirement that petitioner show prejudice means that he must establish that his trial attorney's acts or omissions tended to affect the outcome of his case. *Id*.[3]

Oregon's courts have long held that a witness, expert or otherwise, may not express an opinion as to whether he or she believes that another witness is telling the truth. *State v. Middleton*, 294 Or 427, 438, 657 P2d 1215 (1983). We refer to direct testimony to that effect—such as when a witness testifies "'that he or she believes that another witness is or is not credible'"—as "true vouching."[4] *Alne*, 288 Or App at 314 (quoting *State v. Corkill*, 262 Or App 543, 552, 325 P3d 796, *rev den*, 355 Or 751 (2014)); *see also State v. Milbradt*, 305 Or 621, 630, 756 P2d 620 (1988) ("An opinion that a person is not deceptive, could not lie without being tripped up, and would not betray a friend * * * is tantamount to the same thing."). As the Supreme Court has explained, the rule against vouching serves the important policy goals of "ensuring that the jury remains the sole arbiter of witness credibility and that the jury's role in assessing witness credibility is not usurped by another witness's opinion testimony." *Chandler*, 360 Or at 330; *see also Berg v. Nooth*, 258 Or App 286, 299, 309 P3d 164 (2013) ("[T]he concern with vouching testimony—particularly testimony from experts—is that jurors will defer to the vouching witness's credibility determinations instead of making those determinations themselves.").

---

[3] Petitioner also argues that the post-conviction court erred in denying him relief based on his claim of ineffective assistance of counsel under the Sixth Amendment to the United States Constitution. The state and federal constitutional standards for determining whether counsel's performance was deficient are "functionally equivalent." *Montez v. Czerniak*, 355 Or 1, 6, 322 P3d 487, *adh'd to as modified on recons*, 355 Or 598, 330 P3d 595 (2014). Petitioner does not advance any argument suggesting that, even if his trial counsel's performance was not constitutionally inadequate under the Oregon Constitution, it fell below federal constitutional standards.

[4] In *State v. Chandler*, 360 Or 323, 331 n 3, 380 P3d 932 (2016), the Supreme Court explained that "[t]he rule that one witness may not comment on the credibility of another witness applies both to comments that bolster and comments that undermine a witness's credibility," and the court stated that it would use the phrase "vouching rule" to refer to the prohibition against both types of testimony. We do the same in this opinion.

It is also settled law that testimony that falls short of "true vouching" is nonetheless impermissible when it conveys the speaker's opinion as to the credibility of another witness. *State v. Lupoli*, 348 Or 346, 357, 234 P3d 117 (2010); *see also State v. Beauvais*, 357 Or 524, 543, 354 P3d 680 (2015) (stating that vouching rule prohibits both direct comments on another witness's credibility and statements that are "tantamount" to direct comments). In determining whether a given statement is an impermissible—even if indirect—comment on credibility, we consider "whether the testimony at issue directly expressed an opinion on the truth of another witness's statement or merely tended to show that another witness either is or is not telling the truth." *Alne*, 288 Or App at 314. We have explained that testimony that may inform a factfinder's credibility determinations but that does not "connect the dots" for the factfinder is typically permissible. *State v. Wilson*, 266 Or App 481, 493, 337 P3d 990 (2014), *rev den*, 356 Or 837 (2015); *see also State v. Black*, 364 Or 579, 588-91, 437 P3d 1121 (2019) (distinguishing testimony that, if believed, would suggest that another witness is being truthful from testimony that directly expresses an opinion that the witness is being truthful). On the other hand, testimony that makes that determination *for* the factfinder typically is *not* permissible. *State v. Brand*, 301 Or App 59, 70, 455 P3d 960 (2019) (officer's testimony that the alleged victim had delayed reporting the defendant's conduct because she feared reprisals impermissibly vouched for her credibility); *see also Black*, 364 Or at 593 (noting that trial courts have no discretion to admit vouching testimony). Simply put, "testimony must assist, not supplant, the jury's assessment of credibility." *State v. Remme*, 173 Or App 546, 562, 23 P3d 374 (2001); *see also State ex rel Juv. Dept. v. Smith*, 185 Or App 197, 215, 58 P3d 823 (2002), *rev den*, 335 Or 402 (2003) (with alleged vouching testimony, the line between permissible and impermissible testimony can be a fine one); *Brand*, 301 Or App at 70 (same).

Here, petitioner never contended that Martin directly commented on his credibility by, for example, opining on whether petitioner had been truthful during his interview; thus, Martin's testimony was not objectionable as "true vouching." *See, e.g.*, *Wilson*, 266 Or App at 489-90 (collecting

case law illustrations of true vouching). Rather, the parties' dispute raised two questions for the post-conviction court: first, whether Martin's testimony tied petitioner's behavior and statements to "more general phenomena or dynamics bearing on credibility," *Remme*, 173 Or App at 562, such that it impermissibly "connected the dots" for the trier of fact and was therefore tantamount to a comment on petitioner's credibility; and, second, if it was an impermissible comment on petitioner's credibility, whether counsel's failure to recognize it as such and take appropriate action constituted a failure to exercise reasonable professional skill and judgment.

We examine each statement with those principles in mind. Martin's "found it curious" statement arose during the following part of his testimony:

"[Prosecutor]:   *What did you ask him about then?*

"[Martin]:   Well, *I found it curious* that he had very detailed recall of the car he drove up, the times he drove out of Springfield, arriving in Corvallis, the events that led to him leaving, the events that led to him when he returned home and had a confrontation or a discussion with his wife to return, and would not have recall of an issue that in my opinion he would have remembered, like touching a ten-year-old girl's vagina.

"[Prosecutor]:   *How did he respond to that?*

"[Martin]:   He began—he agreed with me that most people would remember touching a ten-year-old girl's vagina for sexual purposes.

"[Prosecutor]:   *Did he do anything else at that time?*

"[Martin]:   Yeah. He put his head in his hands and started exclaiming 'Oh, God' repetitively."

(Emphases added.)

Several things are notable about this exchange. First, the statement, "I found it curious," appears to be declaratory rather than interrogatory, as one might expect in response to the prosecutor's question: "What did you ask him about then?" But, in context, Martin's testimony does appear responsive to the prosecutor's question, even though, rather than telling the prosecutor what he next

*asked* petitioner, Martin tells the prosecutor what he next *told* petitioner: that he "found it curious" that petitioner had a detailed recollection of the day's events but no recollection of whether he had touched J's vagina.

Second, although petitioner's briefing suggests that Martin was permitted *at trial* to comment on his credibility, it is evident from the above colloquy that Martin was testifying as to what he had said during his out-of-court interview of petitioner; he was not testifying that he currently "found it curious" that petitioner could not remember whether he had touched J inappropriately. The Supreme Court has recently clarified that, for purposes of the vouching rule, it is immaterial whether a witness's comment on another person's credibility occurred at trial or on some previous occasion. *Chandler*, 360 Or at 334 ("We * * * expressly recognize that the bounds of the vouching rule are not defined by the setting in which the credibility comment was uttered."). As we explain below, however, that distinction may have some bearing on whether trial counsel's failure to recognize Martin's statement as potentially objectionable constituted inadequate assistance of counsel.

Third, the prosecutor's follow-up questions—"How did he respond to that?" and "Did he do anything else at that time?"—provide support for the superintendent's contention that the state did not offer Martin's statement that he found petitioner's memory issues curious as an opinion that he was not credible but, instead, to provide context for petitioner's responses to that statement. That is, even though neither the parties nor the court articulated at trial what relevance the statement had, the above excerpt supports the conclusion that Martin's "found it curious" statement was not "offered for the truth of the credibility opinion that it expresse[d]." *Chandler*, 360 Or at 334 (vouching rule does not apply to statements regarding credibility if "offered for a relevant, non-opinion purpose"); *see id.* at 334-35 (Although record was "somewhat sparse as to the purpose for which the challenged portions of the interview were offered," court was able to glean from context that they "were not admitted for the truth of the credibility opinions that they contained.").

In light of the foregoing, we conclude that petitioner has not demonstrated that counsel's performance was deficient when he did not object to the "found it curious" statement. As noted, petitioner's argument is that, when Martin testified that he had told petitioner that he found it curious that petitioner could recall the day in detail but had no memory of sexually touching J, Martin was "essentially telling the jury that petitioner was a liar who should not be believed." We disagree. Although, in isolation, Martin's testimony may appear to express his distrust of petitioner, the context belies petitioner's contention that it was offered as evidence that he should not be believed. Rather, it was offered to provide context for Martin's testimony as to how petitioner had responded during his interview, and thereby enable the jury to assess petitioner's credibility for itself. *See Remme*, 173 Or App at 562 (testimony that assists but does not supplant jury's credibility assessments is not vouching). Thus, it was not objectionable, *see Chandler*, 360 Or at 334 (statement regarding credibility offered for relevant, non-opinion purpose does not constitute vouching), and, therefore, trial counsel did not perform deficiently in allowing Martin to testify about that statement without objection.

Two further considerations support our conclusion that petitioner has not established that counsel performed inadequately in regard to the second statement. First, even if Martin's statement was, contrary to our understanding, offered as a comment on petitioner's credibility, the preceding discussion would nonetheless foreclose the conclusion that every reasonable attorney would have recognized it as objectionable and responded accordingly. *See Maney v. Angelozzi*, 285 Or App 596, 608, 397 P3d 567 (2017) (inadequate-assistance test considers whether, "given *** the arguments available to counsel under the circumstances, *** every attorney exercising reasonable professional skill and judgment" would have made a particular argument). Second, and relatedly, at the time of petitioner's criminal trial, the Supreme Court had not yet issued *Chandler*. Thus, as the court acknowledged in that opinion, there was some uncertainty whether the vouching rule applied to out-of-court comments regarding credibility. *Chandler*, 360 Or at 333 (discussing *State v. Odoms*, 313 Or 76, 82-83, 829 P2d

690 (1992)). And, indeed, as the court noted in *Chandler*, 360 Or at 333, our own decision in that case maintained that distinction. *State v. Chandler*, 269 Or App 388, 394, 344 P3d 543 (2014). For that additional reason, we cannot conclude that all reasonable counsel at the time would have objected to Martin's statement even if it did amount to an impermissible comment on petitioner's credibility.

For somewhat different reasons we reach the same conclusion as to the third statement that petitioner identifies, which Martin made during cross-examination. That statement arose during the following exchange:

"[Defense Counsel]:  So, I mean, touch—a person can use touched to mean, you know, they touched somebody in the ordinary sense of touching or touched in a sexual manner?

"* * * * *

"[Martin]:   I was not inside his mind but I was confident in watching him with his head buried in his hands saying 'Oh, god. Oh, god' that he was well aware of what we were talking about.

"[Defense Counsel]: Alright. Well, are you aware of whether or not perhaps he was just worried about what was going to happen to him regardless of whether he'd done something wrong or not?

"[Martin]:   *Well, if he'd done nothing wrong I found his behavior to be completely out of character.*

"[Defense Counsel]:  Well, have you, for example—don't you think that anybody who is accused of something like this would have reason to be scared and upset?

"[Martin]:   *If I had done nothing wrong I would not—I would not be asking for forgiveness, I would not be bargaining, I would be telling you I did nothing wrong.*"

(Emphases added.)[5] As noted, petitioner characterizes that testimony as Martin "expressly offering his opinion that petitioner was acting like a person who was guilty." We understand petitioner to contend that, although it was

_____

[5] Petitioner does not quote the specific statement that he finds objectionable. For purposes of our discussion, we treat the emphasized language collectively as the statement that petitioner contends trial counsel should have contested.

permissible for Martin to describe petitioner's conduct for the jury, he was not permitted to opine on the significance, if any, of that conduct. The superintendent's response is threefold. First, he notes that Martin's statements were responsive to trial counsel's questions. The superintendent argues that, because defendant's attorney invited the purported vouching evidence, the trial court would have denied any objection to that evidence because counsel's questions had "open[ed] the door." As a result, not all reasonable counsel would have objected, and trial counsel's performance therefore was not deficient.[6] Second, and relatedly, the superintendent argues that, since trial counsel had invited Martin's responses and any objection to them would therefore have been unsuccessful, petitioner cannot show *prejudice* even if counsel's performance *was* inadequate. Third, the superintendent argues, to the extent that petitioner is now arguing that trial counsel's cross-examination as a whole was deficient, he did not allege that deficiency in his petition for post-conviction relief, and, in any event, his approach to questioning Martin reflected, on the whole, a reasonable strategic decision, even if it may have backfired. That is, counsel appears to have been trying to minimize the impact of Martin's testimony on direct, specifically, his testimony that petitioner claimed not to recall whether he had sexually touched J. *See Krummacher v. Gierloff*, 290 Or 867, 875, 627 P2d 458 (1981) (recognizing that competent counsel can make "tactical choices that backfire, because, by their nature, trials often involve risk").

As with Martin's second statement, we again conclude that petitioner has not established that his trial counsel's performance was constitutionally inadequate, albeit on slightly narrower grounds than those advanced by the superintendent. We express no opinion regarding the superintendent's argument that, because counsel somehow invited Martin's arguably impermissible responses, he could not have successfully challenged those responses, or at least reasonable counsel could so believe. Further, we are

---

[6] Although we note that petitioner contends that trial counsel should have objected or *moved to strike* Martin's responses, he has not argued that counsel should have moved to strike on the grounds that Martin's answers were not responsive to his questions.

skeptical of the argument that, because counsel's strategy regarding cross-examination was sound *as a whole*, counsel cannot be faulted for any failings that may have occurred in the course of that otherwise competent cross-examination. In the limited context of this case, however, we agree that petitioner's failure to contend that his trial counsel performed deficiently by asking the questions that he asked precludes him from establishing that he received inadequate assistance of counsel.

As the superintendent points out, Martin's answers were, in fact, responsive to the questions he had been asked—they probably just were not the answers that counsel had hoped for. That is, counsel was asking for Martin's views as to what petitioner was most likely thinking when he said and did certain things. Counsel asked, in regard to why petitioner had "buried" his head in his hands: "Well, are you aware of whether or not perhaps he was just worried about what was going to happen to him regardless of whether he'd done something wrong or not?" Given that arguably open-ended question, Martin understandably gave an answer that reflected *his* view of what petitioner had been thinking, rather than endorsing counsel's suggestion that he might have been thinking something entirely different. Similarly, when counsel suggested that petitioner's demeanor was due simply to the accusation rather than his guilt, Martin again responded that he would have expected a different reaction from one who had been falsely accused.

Despite our skepticism of the superintendent's broad argument regarding trial counsel's *overall* cross-examination strategy, we draw on related reasoning in concluding that counsel's performance has not been shown to be constitutionally inadequate. As the superintendent suggests, sound questions can, at times, lead to problematic responses. And, insofar as petitioner has not asserted that counsel's *questions* were constitutionally deficient, that appears to be what happened here: Martin gave a troublesome response to counsel's presumably reasonable question. Thus, the narrow question on post-conviction is whether all reasonable counsel would have objected or moved to strike once the witness gave an undesirable response to an appropriate question, assuming that there were justifiable grounds for doing so. *See Maney*,

285 Or App at 608 (considering, in an inadequate-assistance case, whether "every attorney exercising reasonable professional skill and judgment" would have taken the course of action asserted in post-conviction proceedings). Put another way, given that questions that "backfire" are an inherent risk of even the soundest cross-examination, does it follow that the only reasonable response to an unexpected answer is to object or move to strike?

Petitioner's briefing sheds no light on these questions. That is, it may well be that all reasonable counsel under the circumstances would have done as petitioner suggests—object or move to strike the offending responses—but it is petitioner's burden to persuade us that that is the case. In our view, petitioner has not satisfied that burden. Petitioner's entire argument as to how he received inadequate assistance is that Martin's responses constituted vouching and that all reasonable counsel would have objected or moved to strike on those grounds. The difficulty we have in assessing that contention is that it is simply a conclusory statement, rather than a developed argument, and does not assist us in assessing whether, in this case, the failure to respond constituted inadequate assistance of counsel. Under the circumstances, we are left to develop petitioner's arguments for him, which we decline to do.[7] Accordingly, we affirm.

Affirmed.

---

[7] Because, as noted, 301 Or App at 576 n 3, petitioner also does not develop any argument that counsel's performance as to this statement or the others should be viewed as ineffective assistance of counsel under the federal constitutional standard, even if it was adequate under the Oregon Constitution, we also reject petitioner's claim under the federal constitution. *See Lotches v. Premo*, 257 Or App 513, 514 n 1, 306 P3d 768, *rev den*, 354 Or 597 (2013) (explaining that we do not separately address an undeveloped federal claim of ineffective assistance of counsel).