Submitted July 3, 2018; reversed and remanded as to claim regarding trial counsel's failure to request a limiting instruction, otherwise affirmed October 7, 2020

RAMON DELGADO-JUAREZ,
*Petitioner-Appellant,*

*v.*

Brad CAIN,
Superintendent,
Snake River Correctional Institution,
*Defendant-Respondent.*

Malheur County Circuit Court
14111227P; A163140

475 P3d 883

Petitioner appeals a judgment denying him post-conviction relief. In the underlying criminal case, petitioner was convicted of several counts of first-degree sexual abuse and first-degree sodomy involving two victims. In petitioner's second assignment of error, he argues that the post-conviction court erred in denying him relief on his claim that his trial counsel had provided inadequate and ineffective assistance of counsel when she elected not to seek a limiting instruction, which would have informed the jury that they could not rely on facts related to one victim to find that petitioner more likely committed the crimes related to the other victim. *Held*: The post-conviction court erred. Trial counsel's decision not to request a limiting instruction was not the product of reasonable professional skill and judgment; further, counsel's decision was prejudicial to petitioner.

Reversed and remanded as to claim regarding trial counsel's failure to request a limiting instruction; otherwise affirmed.

J. Burdette Pratt, Senior Judge.

Jed Peterson and O'Connor Weber LLC filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Timothy A. Sylwester, Assistant Attorney General, filed the brief for respondent.

Before DeHoog, Presiding Judge, and DeVore, Judge, and Aoyagi, Judge.

DeHOOG, P. J.

Reversed and remanded as to claim regarding trial counsel's failure to request a limiting instruction; otherwise affirmed.

DeVore, J., concurring in part; dissenting in part.

## DeHOOG, P. J.

A jury convicted petitioner of eight counts of first-degree sexual abuse and three counts of first-degree sodomy involving two alleged victims—his niece and his daughter. Petitioner now appeals a judgment denying him post-conviction relief regarding those convictions and raises five assignments of error; we write to address one.[1] In his second assignment of error, petitioner contends that the post-conviction court erred in denying him relief on his claim that his trial attorney had provided inadequate and ineffective assistance of counsel when she elected not to seek a limiting instruction, which would have told the jury that they could not rely on facts related to the sexual assault of one alleged victim as evidence that petitioner had more likely sexually assaulted the other alleged victim. For the reasons that follow, we conclude that trial counsel's decision against requesting a limiting instruction was not the product of reasonable professional skill and judgment; we further conclude that counsel's omission was prejudicial to petitioner. Accordingly, the post-conviction court erred in denying that claim, and we, therefore, reverse and remand the post-conviction court's judgment.

We review the post-conviction court's denial of relief for legal error. *Waldorf v. Premo*, 301 Or App 572, 573, 457 P3d 298 (2019), *rev den*, 366 Or 451 (2020) (applying that standard). "We accept the post-conviction court's express and implicit findings of fact if there is evidence in the record to support them." *Id.*; *see also Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968) (where court has not expressly ruled on all facts relevant to decision and evidence could support varying findings, court is presumed to have decided facts in accordance with its conclusions). We state the facts accordingly.

The underlying allegations involved two alleged victims, petitioner's niece, AB, and his adoptive daughter, AR, both of whom testified at petitioner's criminal trial. In the summer of 2001, petitioner lived with his then-wife and her two children, including AR. At the time, AB lived with

---

[1] We reject the remaining assignments without written discussion.

her own family less than two blocks away. According to AB, one day, when she was seven years old, she was home alone watching television when petitioner knocked on the door. AB opened the door for petitioner and resumed watching TV. Petitioner then approached AB on the sofa, sat down next to her, put his hand on her stomach, and asked if he could lick her "private spot"; AB responded "no." Petitioner persisted, first pulling down AB's pants and underwear and getting on top of her, and then pulling down his own pants. AB testified that then she recalled feeling "something," which she thought was probably petitioner's penis, "go in" to her vagina, causing her sharp pain. AB then "blacked out." She recalled, however, that when petitioner stopped, he first told AB not to tell anyone that he had come over to her house, and then left.

AB ultimately disclosed her alleged abuse to a family member when she was 17 years old. The family member sought help on her behalf, and the police eventually became involved. During the ensuing investigation into petitioner's alleged abuse of AB, the police learned of allegations that petitioner had also abused his daughter, AR. AR testified at petitioner's trial that he had sexually abused her beginning in 1994, when she was seven years old. At the time, AR said, her family had lived together in a mobile home and had all slept together in the same room, where there had been two beds. According to AR, her mother had worked nights at the time, while petitioner had stayed home to watch the children. AR explained that, in a typical episode of abuse, she would fall asleep with her clothes on, then wake up to discover that her pants and underwear had been removed and that petitioner was touching her vagina. AR testified that, in addition to touching her vagina with his penis and fingers, petitioner would touch her breasts, lick her vagina, and place her hands on his penis. AR also testified that petitioner sexually abused her in other areas of the house, including in the bathroom when she urinated, as well as in the living and laundry rooms. Petitioner stopped his abuse of AR when she was 12, after the family had moved to a different house where AR had her own room with a door that locked.

Petitioner testified on his own behalf at trial, where he denied having sexually abused either AB or AR.

Petitioner further testified that, contrary to the testimony of those witnesses, the family had never shared a room, AR's mother had not worked nights, and he had never been inside AB's home.

During the state's closing argument, the prosecutor first recounted AB's testimony and then separately reviewed the evidence regarding AR, arguing to the jury that the state had met its burden of proof as to each count. The defense, in turn, reiterated its contention that the alleged abuse had never occurred. Trial counsel emphasized that neither AB nor AR had liked petitioner, and she theorized that they both, therefore, had targeted petitioner with false allegations. Counsel also pointed out that, in her view, many aspects of the case were "strange," and that the alleged abuse of AB, in particular, was "qualitatively, for lack of a better word, different." Counsel argued that, given the "odd, strange, and even fantastic" aspects of the case, there was reasonable doubt as to petitioner's guilt.

At the conclusion of petitioner's trial, the jury unanimously voted to convict him of three counts of first-degree sodomy and seven counts of first-degree sexual abuse, all committed against AR and alleged to have occurred between 1994 and 1998. On a separate count of first-degree sexual abuse, alleged to have been committed in 2001 against AB, the jury voted 11 to 1 to convict. Finally, on a single count charging petitioner with first-degree rape against AB in 2001, the jury voted 10 to 2 to acquit. Petitioner appealed his convictions, and, other than reversing the trial court's imposition of attorney fees, we affirmed. *State v. Delgado-Juarez*, 263 Or App 706, 707, 330 P3d 1248, *rev den*, 355 Or 880 (2014).

Petitioner subsequently petitioned for post-conviction relief, contending that, in various ways, he had been denied his right to adequate counsel under Article I, section 11, of the Oregon Constitution, and effective counsel, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. In the claim pertinent to his second assignment of error, petitioner alleged the following:

> "Because petitioner's jury received evidence that he raped, sodomized and sexually abused cousins AR (Counts

3-12) and AB (Counts 1, 2) during multiple separate criminal episodes, which substantially increased the probability of convictions on all offenses, competent counsel exercising reasonable professional skill and judgment would request that the court instruct the jury to consider the evidence concerning each alleged victim separately and only as that evidence related to a specific charge or charges relating to that specific alleged victim.

"*****

"Because the jury did not receive a limiting instruction ***, there is a reasonable probability that the jury convicted petitioner on Counts 2-13 [*sic*] because it believed that he had a propensity for sexually abusing minor females."

In response, the superintendent submitted a declaration in which trial counsel somewhat cryptically stated that she had not requested the specified jury instruction because "such a limiting instruction with respect to evidence that was admitted without limitation would not have been curative." The post-conviction court denied all of petitioner's claims. As to petitioner's claim that trial counsel had performed deficiently in failing to request a limiting instruction, the post-conviction court ruled as follows:

"The legal basis for denial of relief is: Petitioner failed to prove that his attorney was ineffective for failing to request a jury instruction advising the jury that they needed to consider the charges related [to] AB and AR separately. Petitioner's trial attorney explained her reasonable decision not to request such an instruction.

"In addition, there is no proof of prejudice. The jury acquitted Petitioner of Count 1 on a 10-2 vote, convicted him of count 2 by an 11-1 vote and convicted him of all counts related to AR by a unanimous verdict. This would indicate that the jury did in fact consider the counts separately. There is no evidence that requesting and giving the requested instruction would have had a tendency to affect the outcome of trial."

Petitioner now appeals, assigning error to the post-conviction court's denial of relief on his claim of inadequate and ineffective assistance of counsel related to counsel's failure to request a limiting instruction. On appeal, as in the post-conviction court, petitioner contends that an attorney

exercising reasonable professional skill and judgment would have asked the trial court to give the jury a limiting instruction informing them that they could not consider facts related to one alleged victim as an indication of guilt as to the other. Petitioner's argument in support of that contention, which he combines with an argument that trial counsel should have demurred to the indictment, is not elaborate. Indeed, the combined argument focuses almost exclusively on the demurrer issue. As to the limiting instruction, petitioner merely asserts that, given counsel's apparent defense strategy, the instruction was necessary to advance that strategy, and that counsel therefore performed deficiently by failing to request it. *See Ayer v. Coursey*, 253 Or App 726, 738-39, 292 P3d 595 (2012) (where trial counsel's defense theory was that victim had been sexually abused by someone other than the defendant, counsel was required to make the arguments necessary to admit evidence that victim had been sexually abused in the past). As to prejudice, petitioner contends that counsel's failure to request the instruction allowed the jury to use the evidence in impermissible ways, such as finding that petitioner had a propensity to commit sexual abuse. That, petitioner argues, tended to affect the outcome of the trial.

The superintendent responds that, although the trial court might have given a limiting instruction if counsel had requested one, the circumstances did not call for one. In the superintendent's view, the charges involving AB and AR were "sufficiently distinct that the jurors would not have been confused." Specifically, the assaults occurred separately, years apart, in different locations, and under different circumstances. Moreover, the superintendent points out, petitioner's defense was the same as to each alleged victim—he simply argued that he had not sexually assaulted either of the alleged victims and that the state had not proved beyond a reasonable doubt that he had. Thus, the superintendent concludes, nothing in petitioner's case would have suggested to the jurors that they might consider the evidence cross-admissible, *i.e.*, that they might believe that evidence as to one of the alleged victims was relevant as to the other. The superintendent highlights the jury's acquittal of petitioner on one of the counts involving AB as evidence that the jury did not regard it that way.

Finally, in what might be characterized as an alternative argument, the superintendent contends that a request for a limiting instruction could have backfired. That is, had trial counsel "requested a limiting instruction, the state could have opposed that request by arguing that the evidence actually *was* cross-admissible. And it is possible that the trial court might have agreed * * * and thus denied [counsel's] motion and instructed the jurors instead that all the evidence presented could be considered by them on each of the charges."[2]

We begin our consideration of the parties' arguments by reviewing the standards that apply to petitioner's post-conviction claim. "Post-conviction relief is warranted when there has been a 'substantial denial' of a petitioner's 'rights under the Constitution of the United States, or under the Constitution of the State of Oregon, or both, and which denial rendered the conviction void.'" *Green v. Franke*, 357 Or 301, 311, 350 P3d 188 (2015) (quoting ORS 138.530(1)(a)). At issue in this case are petitioner's right to adequate counsel under Article I, section 11, of the Oregon Constitution and the right to effective counsel under the Sixth Amendment to the United States Constitution. *Id.* Although those provisions are worded differently, "they embody similar objectives." *Id.* (internal quotation marks omitted); *see also Montez v. Czerniak*, 355 Or 1, 6-7, 322 P3d 487 (2013), *adh'd to as modified on recons*, 355 Or 598, 330 P3d 595 (2014) (stating that the state and federal standards are "functionally equivalent").[3]

To succeed on a claim of inadequate assistance of counsel under the Oregon Constitution, petitioner must

---

[2] Notably, although the superintendent argues that a limiting instruction was not necessary under the circumstances and posits that the prosecutor might have come up with some reason not to give the instruction, he does not contend that the trial court would have declined to give one if counsel had requested it, nor does he dispute that, in the absence of some unknown argument by the state, defendant would have been entitled such an instruction under OEC 105 and our case law.

[3] Petitioner does not advance any argument suggesting that, even if trial counsel's performance was not constitutionally inadequate under the Oregon Constitution, it fell below federal constitutional standards. Because the two standards are "functionally equivalent," we focus our analysis on petitioner's claim under the Oregon Constitution. *Waldorf*, 301 Or App at 584 n 7.

establish, by a preponderance of the evidence, that defense counsel failed to "exercise reasonable professional skill and judgment and that petitioner suffered prejudice as a result of counsel's inadequacy." *Waldorf*, 301 Or App at 575-76; *see also Sullivan v. Popoff*, 274 Or App 222, 230-31, 360 P3d 625 (2015), *rev den*, 358 Or 833 (2016) (stating that a petitioner has the burden of proof in a post-conviction relief case). We evaluate the reasonableness of trial counsel's "skill and judgment under the circumstances existing at the time of the challenged act or omission." *Sullivan*, 274 Or App at 231 (internal quotation marks omitted). In other words, we must not second-guess trial counsel's performance "with the benefit of hindsight." *Pereida-Alba v. Coursey*, 356 Or 654, 662, 342 P3d 70 (2015).

     With regard to decision making, "[w]here a trial lawyer [has] made a 'conscious choice' regarding a particular act or omission, we evaluate the reasonableness of that conscious decision under the circumstances that confronted counsel at the time of the decision." *Sullivan*, 274 Or App at 231 (citing *Pereida-Alba*, 356 Or at 670); *see also Davis v. Cain*, 304 Or App 356, 365, 467 P3d 816 (2020) (applying that standard in regard to defense counsel's decision "not to do something"). Where, on the other hand, a trial attorney has failed to make a conscious decision as to the challenged act or omission, we must evaluate whether that "failure to make a conscious decision about the matter in question is reasonable under the particular circumstances of the case, examining, among other things, whether the strategy that defense counsel did employ was reasonable, the relationship between the evidence or theory that defense counsel failed to consider and the strategy that counsel did pursue, and the extent to which counsel should have been aware of the strategy that petitioner now identifies." *Sullivan*, 274 Or App at 231-32 (internal quotation marks omitted).

     Here, we assume that trial counsel's failure to request a limiting instruction was the product of a conscious choice. Although it shares little insight into her rationale, counsel's declaration—stating that she did not request a limiting instruction because it "would not have been curative"—can be understood as saying that she considered asking for an instruction before ultimately deciding not to.

Furthermore, we understand that, by stating that "[p]etitioner's trial attorney explained her reasonable decision not to request such an instruction," the post-conviction court implicitly found that counsel's failure to request a limiting instruction had been the product of a conscious choice. Even though that may not be the only reasonable reading of counsel's declaration, it provides record support for the post-conviction court's finding; we, therefore, are bound by that finding. *See Ball*, 250 Or at 487; *Waldorf*, 301 Or App at 573. What remains for us to determine, then, is whether, as the post-conviction court concluded, counsel's choice was reasonable under the circumstances. *Sullivan*, 274 Or App at 232.

The Supreme Court has long recognized that decision-making is an inherent part of competent representation, requiring defense attorneys to make sometimes difficult choices between which actions to take on behalf of clients and which ones not to take. As the court has explained in the context of an attorney's pretrial investigation,

> "In investigating a case, a lawyer inevitably is faced with choices as to what avenues of investigation to pursue. A 'tactical decision' in the course of an investigation is a conscious choice by a lawyer either to take or to omit some action on the basis of an evaluation of the nature and complexity of the case, the likely costs and potential benefits of the contemplated action, and other factors. But the fact that a lawyer has made a 'tactical decision' does not mean that the lawyer's choice meets the constitutional standard for adequate assistance of counsel."

*Stevens v. State of Oregon*, 322 Or 101, 109, 902 P2d 1137 (1995). Of particular significance here, the quoted passage makes it clear that the mere fact that an attorney has made a conscious choice—even one qualifying as a "tactical decision"—is not itself grounds to deny post-conviction relief; rather, the choice must result from "'*appropriate* consideration of the risks and benefits'" of the decision. *Farmer v. Premo*, 363 Or 679, 699, 427 P3d 170 (2018) (quoting *Montez*, 355 Or at 27; emphasis in *Farmer*). And, in that regard, "appropriate consideration" means "a reasonably accurate and adequate consideration of the facts produced by an investigation." *Farmer*, 363 Or at 699.

Furthermore, if defense counsel's cost-benefit analysis is based on an erroneous or incomplete understanding of the law, the resulting choice, much like a choice based upon a flawed perception of the facts, is unlikely to be the product of competent representation. *See Lizarraga-Regalado v. Premo*, 284 Or App 176, 186, 390 P3d 1079, *rev den*, 361 Or 803 (2017) (explaining that "the exercise of reasonable professional skill and judgment requires criminal defense counsel to research and analyze the law to the extent appropriate to the nature and complexity of the case" (internal quotation marks omitted)); *see also Farmer*, 363 Or at 695 (considering whether "it [is] enough for counsel to gather the requisite information about the facts and law and weigh them to make a given tactical decision, or must counsel also have a reasonably accurate understanding of the facts and law that go into that analysis").

Applying the foregoing standards, we conclude that trial counsel's decision not to request a limiting instruction reflected an absence of reasonable professional skill and judgment. As we explain below, although counsel consciously made a choice, under the circumstances, her decision reflected an erroneous or incomplete understanding of the law and did not reflect any evaluation of the costs and benefits of that decision; it therefore, did not follow "*appropriate* consideration of the risks and benefits" of her choice. *Farmer*, 363 Or at 699 (emphasis in original). The post-conviction court erred in concluding otherwise.

At the time of petitioner's criminal trial, which took place in 2012, evidence tending to prove a person's character and propensity to act in accordance with that character generally was inadmissible in criminal trials, including in child sexual abuse cases such as petitioner's. *See, e.g.*, *State v. Williams*, 258 Or App 106, 111-12, 308 P3d 330 (2013), *rev'd*, 357 Or 1, 346 P3d 455 (2015) (quoting *State v. Johnson*, 340 Or 319, 338, 131 P3d 173, *cert den*, 549 US 1079 (2006) (for evidence to be admissible under OEC 404(3), its logical relevance must not depend on "an inference relating to the defendant's character or propensities")); *see also* OEC 404(3) (evidence of a defendant's "other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith"). As a

result, unless the state could identify a nonpropensity-based reason for evidence regarding one alleged victim to be considered in connection with the other, the evidence would not—at least in 2012—have been cross-admissible. *See, e.g.*, *State v. Leistiko*, 352 Or 172, 180, 282 P3d 857, *adh'd to as modified on recons*, 352 Or 622, 292 P3d 522 (2012) (so holding under OEC 404(3)).

Furthermore, as petitioner emphasizes, OEC 105 allows parties to request limiting instructions when evidence is admissible for one purpose, but not another. OEC 105 provides:

> "When evidence which is admissible as to one party for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, *shall* restrict the evidence to its proper scope and instruct the jury accordingly."

(Emphasis added.) Thus, had counsel requested an appropriate limiting instruction, the trial court may well have found it had no choice but to read it to the jury. *See* Laird C. Kirkpatrick, *Oregon Evidence* § 105.03, 65 (6th ed 2013) ("Upon receiving an appropriate request, the court is required to give the instruction."); *see also Green*, 357 Or at 319 (parenthetically describing OEC 105 as "*requiring* limiting instruction upon request" when evidence of the sort it describes is admitted (emphasis added)).

That alone, of course, does not compel the conclusion that counsel performed deficiently in failing to make such a request. Conceivably, at least, there was the possibility that, notwithstanding the mandatory phrasing of OEC 105, the court would *not* give an instruction even if requested. Counsel appears to have believed that a limiting instruction would be ineffective and may, for that reason, also have believed that a request for one would be viewed as untimely by the trial court. As counsel's declaration seems to recognize, when evidence is initially admitted without limitation, a trial court is not later required to give an otherwise appropriate limiting instruction. *State v. Stevens*, 328 Or 116, 137-38, 970 P2d 215 (1998) (stating that, under those circumstances, decision whether to give limiting instruction is discretionary). As we have recognized in other contexts, the

failure to make even an argument whose merit is clear does not invariably constitute inadequate assistance. It follows that failing to make an argument whose merit is debatable is not inadequate representation *per se*.

Indeed, even if the trial court would have been required to give a limiting instruction here, the failure to request one would not necessarily mean that counsel failed to exercise reasonable professional skill and judgment. That concept is reflected in cases in which we have held that a trial court's failure to give, *sua sponte*, the sort of limiting instruction at issue here is not plain error. *See, e.g.*, *State v. Randolph*, 123 Or App 566, 571-72, 860 P2d 873 (1993), *rev den*, 318 Or 382 (1994) (rejecting argument that trial court plainly erred in failing to give a limiting instruction regarding "other crimes" evidence, in part because "some defense counsel do not want them, because they call the jury's attention to other bad acts or convictions"). As we recognized in *Randolph*, a trial court is not required to provide a limiting instruction on its own motion, because, in part, there are circumstances in which an attorney may make the deliberate choice not to request a liming instruction. Kirkpatrick, *Oregon Evidence* § 105.03 at 65.

In that regard, we acknowledge that, in addition to defense counsel's stated rationale, there are other plausible reasons for an attorney exercising reasonable professional skill and judgment to opt against requesting a limiting instruction in a case such as petitioner's. As the superintendent points out, had counsel made that request, the state might have responded by successfully advancing a nonpropensity-based justification for specifically *allowing* the jury to consider evidence relating to each alleged victim as relevant to the charges regarding the other. *See, e.g.*, *State v. McKay*, 309 Or 305, 307-08, 787 P2d 479 (1990) (evidence of uncharged sexual contacts between the defendant and the victim admissible under OEC 404(3) to demonstrate the defendant's sexual inclination towards the victim); *State v. Ofoegbu*, 242 Or App 112, 114, 255 P3d 538, *rev den*, 350 Or 571 (2011) (evidence that the defendant had previously committed a sex offense against another victim admissible to show the defendant's intent or sexual purpose); *State v. Momeni*, 234 Or App 193, 202, 227 P3d 1230, *rev den*, 348 Or

523 (2010) (evidence of the defendant's prior sexual misconduct with another victim is admissible under OEC 404(3) in a sexual abuse trial to demonstrate the defendant's pattern of conduct in manipulating his landlord-tenant relationship to make his victims vulnerable to his sexual advances). Thus, diligent counsel may well have been unwilling to risk having the court specifically instruct the jury that they *could* consider the evidence as to each alleged victim mutually relevant, even if for a reason other than petitioner's character.

Ultimately, however, the fact that another attorney might, on other reasonable basis, have made the same decision that counsel made in this case does not control the assessment of counsel's performance. The difficultly we have with considering those other potential reasons for trial counsel's decision, as the superintendent would have us do, is that nothing in the record indicates that counsel herself considered them. As noted, the post-conviction court concluded that counsel had "explained her reasonable decision not to request such an instruction." However, trial counsel's entire "explanation" for that decision is a single sentence in her declaration stating that "such a limiting instruction with respect to evidence that was admitted without limitation would not have been curative." At most, counsel's statement suggests that, at some point during petitioner's trial, she thought about requesting a limiting instruction, but decided against making that request because, in her assessment, it was by that time strategically or legally too late.

Counsel's succinct explanation limits our inquiry. Even if, upon reflection, we or the superintendent can identify a number of alternative considerations that, on balance, might have justified trial counsel's decision, we may not engage in *post hoc* rationalization in a manner that does not reflect "'counsel's actual strategic reasoning.'" *Farmer*, 363 Or at 698 (quoting *Montez*, 355 Or at 27 ("We agree, of course, that courts may not indulge in *post hoc* rationalizations of trial counsel's decisions that contradict the evidence derived from their actions.")). That is, although it is permissible to discuss other considerations counsel might have had in mind "when the record supports a conclusion that an attorney made a choice after *correctly* considering the costs and benefits of that decision," we may not "simply disregard"

the fact that a decision was "based in part on inaccurate or inadequate information" just because there was "other accurate information that the attorney considered *or may have considered*." *Id.* at 699 (emphases added).

Here, the only evidence of counsel's reasoning is the statement in her declaration. The superintendent points to no other evidence in the trial or post-conviction court records suggesting any rationale for counsel's decision other than her belief that a limiting instruction would be ineffective. In other words, counsel apparently believed there would be little or no benefit to having an instruction, so she did not ask for one. There is no indication that counsel believed that asking for a limiting instruction carried a risk of backfiring or otherwise harming her defense of petitioner, nor is there evidence of any other cost that counsel weighed against the minimal benefit that she thought an instruction would provide.

Furthermore, the rationale that counsel relied on did not reflect a reasonably accurate understanding of the applicable law; as a result, counsel did not choose to forgo requesting a limiting instruction only after "appropriate consideration of the risks and benefits" of that decision. *Farmer*, 363 Or at 699. For one thing, counsel evidently believed that a limiting instruction would be ineffective if given sometime *after* the underlying evidence had been introduced without limitation. *See, e.g.*, *Stevens*, 328 Or 138 ("Timeliness, in this context, as in almost any context in which the admissibility of evidence is at issue, means at or before the time that the evidence is offered to the jury. At the very least, it must occur at a time when the trial court is able to take appropriate action to mend the harm."). But, whether or not counsel's understanding was correct in that regard, her rationale reflects the mistaken belief that she could not have requested a limiting instruction at the time that the evidence was received, so as to immediately limit the manner in which the jury considered it. *See id.*

For another thing, the mere fact that petitioner's trial attorney may have had a reasonable basis for her decision does not satisfy the requirement, under cases such as *Farmer*, that tactical decisions follow a cost-benefit analysis.

363 Or at 699. That is, notwithstanding the existence of plausible reasons to forgo requesting an instruction whose merits were debatable (or at least subject to the trial court's discretion), nothing in the record reflects any consideration of the risks attendant to requesting a jury instruction. And, in our view, to posit that counsel may have had those risks in mind despite there being no suggestion of them in her explanatory declaration or anywhere else would constitute impermissible *post hoc* rationalization. *See id.* at 698. Thus, on this record, we conclude that the post-conviction court erred in concluding that trial counsel made a reasonable tactical decision when she opted not to request an appropriate limiting instruction.

Having concluded that defense counsel performed deficiently in failing to request a limiting instruction, we turn to whether petitioner suffered prejudice as a result. Prejudice occurs when trial counsel's inadequate performance "could have tended to affect" the outcome of the case. *Green*, 357 Or at 323 (internal quotation marks and emphasis omitted). "[T]he tendency to affect the outcome standard demands more than a mere possibility, but less than a probability." *Id*. at 322. Applying that standard, we conclude that petitioner was prejudiced by counsel's omission. In resisting that conclusion, the superintendent argues that no limiting instruction was necessary under the circumstances of this case.[4] As noted, the superintendent observes that the charges involving each alleged victim were distinct, in that the sexual assaults occurred at different times, in different locations, and under different circumstances. Moreover, the prosecutor never argued that the jury could or should rely on the evidence relating to one of the alleged victims as evidence that petitioner had also sexually assaulted the other. Finally, neither of the alleged victims was a witness with respect to the assault on the other.

As petitioner suggests, however, without a specific limiting instruction, nothing in the instructions that the jurors actually received would have prevented them from

---

[4] In the briefing, the superintendent directs some of these arguments more to the merits than to the issue of prejudice. However, we view them as more germane to the prejudice inquiry and so consider them here.

considering petitioner's alleged abuse of multiple victims as evidence of a propensity to sexually assault young girls. *Cf. State v. Miller*, 327 Or 622, 632, 969 P2d 1006 (1998) (acknowledging that "other crimes evidence" offered in the course of a joint trial may indirectly effect a violation of the prohibition against propensity evidence). We recognize that we and the Supreme Court have repeatedly held that the joinder of charges involving multiple victims does not, in the absence of other circumstances, prejudice a defendant within the meaning of the joinder statute, ORS 132.560. *E.g.*, *Miller*, 327 Or at 629 (rejecting defendant's "categorical approach" for cases involving violence or sexual assault); *State v. Dimmick*, 248 Or App 167, 178, 273 P3d 212 (2012) ("The mere assertion that evidence relating to some charges will influence the jury's consideration of other charges is insufficient."). As we will explain, however, that joinder case law informs, but does not control, the prejudice analysis applicable to petitioner's inadequate-assistance-of-counsel claim.

*Green* is particularly instructive. In that case, which is similar to petitioner's in many regards, the Supreme Court discussed the intersection of its case law regarding joinder, other acts evidence, and reliance on limiting instructions. *Green*, 357 Or at 315-17. The court first noted that, under its decision in *Miller*, a court considering issues of joinder and severance under ORS 132.560(3) "must focus on 'any circumstance' that impairs a defendant's right to a fair trial." *Id*. at 316 (quoting *Miller*, 327 Or at 633). The Supreme Court then explained that, among the relevant circumstances, "the probable effectiveness of limiting instructions given to the jury by the court" was "[o]f particular relevance." *Green*, 357 Or at 316 (internal quotation marks omitted). Quoting *Leistiko*, the court then elaborated,

> "[w]hen a trial court declines to sever joined offenses, and evidence relating to one offense is not admissible to prove another joined offense, a trial court ordinarily will instruct the jury to consider the evidence on each offense separately to prevent the jury from using the evidence offered to prove one offense to decide another joined offense.

> "*Leistiko,* 352 Or at 178 ('recognizing the risk that a jury may use evidence admitted to prove one count in deciding whether the state has proved a joined count')."

*Id*. at 316-17. Significantly, notwithstanding its rejection in *Miller* of a categorical approach to prejudice under ORS 132.560(3), the court in *Green* expressly acknowledged both the potential spillover effect when charges involving multiple victims are joined for trial *and* the role that appropriate limiting instructions can play in mitigating *that* prejudice. *Id*.

Given that the Supreme Court has repeatedly recognized "the risk that a jury may use evidence admitted to prove one count in deciding whether the state has proved a joined count," *Green*, 357 Or at 317 (so characterizing the court's reasoning in *Leistiko*), we conclude that trial counsel's failure to mitigate that risk through a limiting instruction prejudiced petitioner for purposes of his post-conviction claim. In reaching that conclusion, we are not suggesting that a defendant is prejudiced within the meaning of ORS 132.560(3) anytime that charges involving multiple victims of violence or sexual assault are joined and a limiting instruction is not given. *See Miller* 327 Or at 629 (rejecting that categorical approach); *see also* ORS 132.560(3) (remedies for prejudice may include ordering an election or separate trials or "whatever other relief justice requires"). Rather, we are recognizing that, collectively, the Supreme Court's decisions in *Miller* and *Green* establish that "prejudice" for purposes of the joinder statute and "prejudice" for purposes of post-conviction relief are not the same thing.[5]

In *Miller*, the court construed the statutory term "prejudice" appearing in ORS 132.560(3). 327 Or at 627-28. The court concluded: "The *actual or likely* impairment of [a party's interest in a fair trial], resulting from the joinder of multiple offenses in a single charging instrument, constitutes 'prejudice' within the meaning of ORS 132.560(3)." *Id*. at 628 (emphasis added). In that same decision, however, the court acknowledged that, although a particular joinder decision may not prejudice a defendant for purposes of ORS 132.560(3), it may well have consequences implicating other

---

[5] Following the Supreme Court's decision in *Miller*, the legislature amended ORS 132.560(3) to require a showing of "substantial" prejudice rather than merely "prejudice." Or Laws 1999, ch 1040, § 17. That change in the law has no bearing on our analysis.

considerations, including whether the admission of evidence related to only some of a defendant's charges would unduly prejudice the defendant as to other charges. *Id*. at 633-34 (addressing defendant's OEC 403 argument). As in other cases, the Supreme Court in *Miller* acknowledged the risk that jurors would misuse that evidence:

> "To be sure, there was at least some degree of danger that admitting evidence of defendant's multiple offenses in a joint trial would tempt the jury to decide the case on the basis of defendant's perceived propensity to commit crimes. However, the evidence was also probative of defendant's guilt of the charged offenses to which the evidence related."

*Id*. at 634 (footnote omitted). Thus, the court concluded that the admission of "other crimes evidence" to prove some but not all of the charges in a case did not prejudice the defendant within the meaning of ORS 132.560(3); it recognized, however, that the proper joinder of charges under the statute might nonetheless result in *other* forms of prejudice requiring other corrective action by the court.[6]

Like *Miller*, the Supreme Court's decision in *Green* involved a joint trial; however, as in this case, the court's focus in *Green* was on whether the petitioner's trial counsel had provided inadequate assistance in failing to request a limiting instruction of the sort at issue here. *See Green*, 357 Or at 303. Unfortunately, the court ultimately left that issue unresolved. Rather than address the inadequate-performance issue—a matter that the post-conviction court itself had left undecided—the Supreme Court addressed whether the post-conviction court had applied the wrong prejudice standard "when it concluded that, if counsel had requested a limiting instruction, the result 'would' not have been different." *Id*. at 321. The court concluded that the post-conviction court had applied the incorrect standard. *Id*.

Describing the post-conviction court's approach as a "probability-based formulation," the Supreme Court held

---

[6] As to the specific question under OEC 403 in *Miller*, the court held that the issue was a matter of discretion that the "trial court could have decided * * * either way." 327 Or at 634. Accordingly, the court had not abused its discretion in permitting the state to introduce evidence of the defendant's multiple offenses in a joint trial. *Id*.

that the correct prejudice inquiry was "whether trial counsel's acts or omissions *could have tended to affect* the outcome of the case." *Id*. at 321-23 (internal quotation marks omitted; emphasis in *Green*). In rejecting a probability-based prejudice analysis, *Green* necessarily distinguished the assessment of prejudice in post-conviction cases from that applicable under the joinder statute, ORS 132.560(3). As explained above, *Miller* defined prejudice in that context solely in probability-based terms. *See Miller*, 327 Or at 627 (describing prejudice standard as authorizing protective action when a party "likely will suffer" harm or injury due to joinder); *id*. at 628 ("prejudice" is the "actual or likely impairment" of a party's interest in a fair trial); *id*. at 629 (rejecting defendant's challenge under ORS 132.560(3) because he had not shown that "the joinder of offenses [was] likely to cause prejudice").

Reading *Miller* and *Green* together, it is apparent that the joinder of charges involving multiple alleged victims—and a corresponding failure to request a limiting instruction confining the jury's consideration of the evidence to the charges to which it relates—can result in prejudice for purposes of post-conviction relief even if the charges were properly joined under ORS 132.560(3), that is, even if there was no prejudice within the meaning of the joinder statute. In other words, if counsel's omission *could have tended to affect* the outcome of the case, then petitioner has established that he was prejudiced by counsel's inadequate performance, even if such a result was less than *likely*. *See Green*, 357 Or at 322 (explaining that, "because many different factors can affect the outcome of a jury trial, in that setting, the tendency to affect the outcome standard demands more than mere possibility, but less than probability").

Here, we conclude that there was more than a mere possibility that counsel's failure to request a limiting instruction affected the outcome of his trial. As discussed above, the Supreme Court has repeatedly recognized the potential for jurors to misuse evidence in joint trials and the value that a limiting instruction can have in avoiding that misuse. Indeed, in arguing against an expansive construction of "prejudice" in *Miller*, the state reasoned that "defendants in many criminal cases will suffer at least some

degree of prejudice from joinder of offenses, and a slight degree of prejudice should not justify severance." 327 Or at 628; *see also Leistiko*, 352 Or at 178 (discussing *Miller* and that opinion's recognition of the risk that jurors will use evidence for propensity purposes).

Applying that standard, we conclude that there was more than a mere possibility that jurors would consider the fact that petitioner was alleged to have sexually assaulted multiple child victims as propensity evidence and would factor that propensity into their verdicts. That use of the evidence would have weighed heavily in favor of the prosecution, even in the absence of an express argument that the jury should use it that way. *See, e.g.*, *State v. Pinnell*, 311 Or 98, 105-06, 806 P2d 110 (1991) (observing that the historical rationale for excluding evidence of propensity to engage in certain crimes is not that such evidence is not relevant or probative, but that it creates a risk of unfair prejudice to the accused). An appropriate limiting instruction, if properly requested and given to the jury, would have directly addressed that potential for prejudice. *See, e.g.*, *State v. Bement*, 363 Or 760, 768-69, 429 P3d 715 (2018) (stating that "a court may address that risk of misuse through a limiting instruction to the jury"); *State v. Voits*, 186 Or App 643, 660, 64 P3d 1156, *rev den*, 336 Or 17 (2003) ("A limiting instructing often is an appropriate means to safeguard against jury misuse of evidence that is admissible to show [one thing] but is inadmissible for other purposes."). In light of the significant possibility that, in the absence of a limiting instruction, the jurors would use the evidence in that highly persuasive manner, we cannot say that counsel's omission had little tendency to affect the verdicts in petitioner's case.

Reversed and remanded as to claim regarding trial counsel's failure to request a limiting instruction; otherwise affirmed.

**DeVORE, J.,** concurring in part; dissenting in part.

I join the majority on petitioner's assignments of error that are rejected without discussion, but I write

separately to address the majority's two-part conclusion on the second assignment of error. In the earlier, criminal case, trial counsel failed to request a permissible, limiting instruction to advise the jury that its consideration of the evidence of the charges involving one child victim should not be considered to relate to the charges involving another child victim. The majority concludes, first, that counsel's failure was an unreasonable exercise of professional skill and judgment and, second, that the failure may have caused prejudice. I have qualms about the first conclusion, given our legal standards, the trial court's ruling to the contrary, and a record that supports the trial court. As for the second conclusion, I believe that we cannot invoke a presumption of prejudice, and, if not, then petitioner has failed to carry his burden of proof on prejudice. We should affirm the post-conviction court's judgment.

In general, we agree on the legal standards. When evaluating whether a criminal defense lawyer has rendered inadequate assistance that warrants post-conviction relief, we consider two sub-issues. *Green v. Franke*, 357 Or 301, 312, 350 P3d 188 (2015). We must determine first whether petitioner demonstrated by a preponderance of the evidence that his trial counsel failed to exercise reasonable professional skill and judgment. *Id.* And, second, we must determine whether petitioner has carried his burden to show that counsel's failure was prejudicial, *i.e.*, it had a tendency to affect the result of the trial. *Id.* at 312, 321 (citing *Krummacher v. Gierloff*, 290 Or 867, 883, 627 P2d 458 (1981)). The second sub-issue does not turn on a "probability" standard. *Green*, 357 Or at 322. Nor does it turn on a presumption of prejudice. The Oregon Supreme Court has explained:

> "[B]ecause many different factors can affect the outcome of a jury trial, in that setting, the tendency to affect the outcome standard demands more than mere possibility, but less than probability."

*Id.* at 322. If the post-conviction court makes findings of fact, then they are binding on us if there is evidence in the record to support them. *Id.* at 312. If the post-conviction court failed to make findings on all issues—and there is conflicting

evidence—we presume that the facts were decided consistently with the conclusions of the post-conviction court. *Id.*

On the issue of counsel's deficient performance, I am less than confident that the majority opinion reaches the correct conclusion. Trial counsel explained that she decided not to request a limiting instruction because it "would not have been curative." The majority opinion concludes that trial counsel's decision "reflected an erroneous or incomplete understanding of the law and did not reflect any evaluation of the costs and benefits of that decision[.]" 307 Or App at 93. It is not entirely clear what error of law or fact the majority determines trial counsel made. Perhaps the point of law is found where the majority opinion suggests that OEC 105 applies so as to require a limiting instruction. Perhaps the perceived error has something to do with understanding that a limiting instruction was discretionary after evidence was admitted without qualification. Nonetheless, the majority opinion goes on to posit several "other plausible reasons for an attorney exercising reasonable professional skill and judgment to opt against requesting a limiting instruction in a case such as petitioner's." 307 Or App at 95. However, the majority opinion constrains its view, stating, "Counsel's succinct explanation limits our inquiry." *Id.* at 96.

I am not so sure. It is true that our inquiry into trial counsel's explanation is limited *when and if* trial counsel's explanation reveals an error of law or misunderstanding of fact. However, our inquiry is not so limited when, without such error, further explanation can be found in the circumstances and is consistent with trial counsel's statement. Referring to that distinction between a limited review and a review of the whole record, the Oregon Supreme Court recalled an earlier precedent and summarized:

> "*Montez* stands for the proposition that, when the record supports a conclusion that an attorney made a choice after correctly considering the costs and benefits of that decision, it is not error for a reviewing court to discuss other considerations that counsel also could have considered in deciding whether counsel's representation was constitutionally adequate. However, *Montez* does not suggest that, when an attorney's decision is based in part on

inaccurate or inadequate information, a court can simply disregard that deficiency and focus only on other accurate information that the attorney considered or may have considered."

*Farmer v. Premo*, 363 Or 679, 699, 427 P3d 170 (2018) (discussing *Montez v. Czerniak*, 355 Or 1, 27, 322 P3d 487 (2014).

It is also true that a limiting instruction is permissible—indeed, beneficial—when there are multiple charges of many sorts, whether one victim or more. *State v. Moore/Coen*, 349 Or 371, 391, 245 P3d 101 (2010), *cert den*, 563 US 996 (2011). However, contrary to the suggestion of the majority opinion, OEC 105 does not *require* a limiting instruction in those circumstances. That rule provides:

"When evidence which is admissible *as to one party* or for one purpose but not admissible *as to another party* or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly."

OEC 105 (emphasis added). The circumstances here did not involve evidence "admissible as to one party" but not "as to another party." The evidence of the charges was all admissible as to one party—petitioner—even if the evidence involved two victims or witnesses. There was no other defendant on trial with petitioner, so OEC 105 did not apply. Consequently, trial counsel did not overlook a limiting instruction that was required by OEC 105.

The next suggestion of the majority opinion should be no more convincing. Even if a limiting instruction remained a discretionary possibility after evidence was admitted without qualification, trial counsel did not say that the law *precluded* a request for a limiting instruction; she did not say that a limiting instruction would not have been *permissible*. She only indicated her assessment that a limiting instruction would not have been *curative*. Therefore, trial counsel's explanation was not premised on an error of law.

Further, nothing in the circumstances of the case indicates that trial counsel made a mistake of fact in

understanding the evidence. *See Farmer*, 363 Or at 699-700 (trial counsel made mistake of fact by misunderstanding of prospective expert witness's testimony). And, nothing in the majority opinion indicates that counsel made a mistake of fact. Therefore, absent a mistake of law or fact, our inquiry in this case is not limited to counsel's "succinct explanation" as the majority opinion would suppose.

If trial counsel made no error of fact or law, then our standard of review should compel acceptance of the conclusion of the post-conviction court—no inadequate performance—because the majority opinion does posit "other plausible reasons" for deciding against requesting a limiting instruction and those explanations support the post-conviction court's conclusion. *See Green*, 357 Or at 312 (construing evidence to support trial court conclusion); *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968) (presuming that the facts were decided in a manner consistent with the trial court conclusion). Those plausible reasons could suffice to conclude discussion at this point.

Even so, I suggest another plausible reason: Trial counsel could have assessed a limiting instruction as not curative due to the unavoidable problem of a case with two victims, the nature of the distinct charges involving those victims, and the jury instructions intended to be given. Those three things give meaning to trial counsel's "succinct explanation."

First, petitioner was charged with sex offenses involving two child victims. They were charges joined pursuant to ORS 132.560(1)(b)(A).[1] Trial counsel did not move to sever the trial of the case as between the two victims. In the post-conviction trial, petitioner's counsel conceded

_____

[1] In relevant part, ORS 132.560 provides:

"A charging instrument must charge but one offense, and in one form only, except that:

"* * * * *

"(b) Two or more offenses may be charged in the same charging instrument in a separate count for each offense if the offenses charged are alleged to have been committed by the same person or persons and are:

"* * * * *

"(A) Of the same or similar character [.]"

that the charges were properly joined.[2] As a consequence, petitioner's case did not involve prior uncharged offenses; it was unlike cases in which the evidence of prior "bad acts" or offenses might be challenged or might be admitted for limited purposes.[3] Rather, the evidence as to each child victim was directly admissible for the separate offenses charged. Trial counsel could correctly conclude that no limiting instruction could be truly curative in the ideal sense of preventing the same jury from hearing evidence as to one victim and not evidence as to another victim. If there is a potential ill-effect, then it is the ill-effect of simply being charged with multiple offenses, regardless whether there is only one victim or there are more victims of charges "[o]f the same or similar character." *See* ORS 132.560(1)(b)(A) (joinder of charges). Even then, it is not such an ill-effect that joinder of charges was not permitted. On facts like these, the risk of prejudice is not sufficient to preclude joinder of such charges. *See, e.g.*, *State v. Miller*, 327 Or 622, 969 P2d 1006 (1998) (affirming denial of motion for separate trials involving sexual offenses with unrelated victims).

Second, trial counsel could also plausibly, even reasonably, conclude that there was little risk of confusion of issues. As the post-conviction court observed, the offenses involving the two victims were distinctly separated in time and place. The offenses involving AB were charged to have occurred in 2001. The offenses involving AR were charged to have occurred from 1994 to 1998. They were not interrelated events. The witnesses did not overlap so as to concern the same charge. The charges in the charging instrument and in the jury instructions were separately specified.

Third, trial counsel could plausibly, even reasonably, conclude that the risk of bias was already minimized.

---

[2] Instead, on appeal here, petitioner has argued that trial counsel should have demurred to the charging instrument as containing charges not properly joined. That first assignment of error we have rejected without discussion. *See* ORS 132.560(1)(b)(A); *see also State v. Miller*, 327 Or 622, 969 P2d 1006 (1998) (affirming denial of motion to sever).

[3] *See, e.g.*, *State v. Baughman*, 361 Or 386, 393 P3d 1132 (2017) (evaluation of admission of evidence of prior uncharged sex offenses involving two victims); *see also State v. Turnidge*, 359 Or 364, 440-42, 374 P3d 853 (2016) (prior bad acts admissible).

She could consider that jurors are expected to follow jury instructions. *See Purdy v. Deere and Company*, 355 Or 204, 227-28, 324 P3d 455 (2014) (quoting *Wallach v. Allstate Ins. Co.*, 344 Or 314, 329, 180 P3d 19 (2008) ("'[w]e presume that a jury follows a trial court's instructions.'"). With requested and given instructions, trial counsel could know that the jury would be advised by the court:

> "It is your duty to weigh the evidence calmly and dispassionately and to decide this case on its merits. *Do not allow bias, sympathy, or prejudice any place in your deliberations.* Do not decide this case on guesswork, conjecture, or speculation."

(Emphasis added.) Although not directly addressed to the charges *within* the case itself, trial counsel had requested and knew that the court would give a parallel instruction telling the jury *not* to draw any inferences from any prior crimes. That instruction told the jury:

> "If you find that the defendant has been previously convicted of a crime, you may consider this conviction only for its bearing, if any, on the believability of the defendant's testimony.

> "Specifically, *you may not use this evidence for the purpose of drawing the inference that, because the defendant was convicted of a previous crime the defendant may be guilty of the crime or crimes charged in this case.*"

(Emphasis added.) When following those instructions, the jury was directed to determine the elements of each of the charged offenses with specific reference to which victim, which acts, and at which time. Putting the instructions together, the jury should already know to shun consideration of evidence as to one victim when considering the evidence as to another victim.

Given those circumstances, trial counsel knew that multiple charges could not be remedied; that the implicit harm, if any, with charges involving two victims was inherent with multiple charges of any sort; and that such unavoidable harm was already addressed by instructions about the presumption of innocence, avoiding bias and prejudice, requiring proof beyond a reasonable doubt, focusing on the elements of each offense, and, closely related, avoiding

drawing negative inferences from earlier offenses. If jurors are trusted to follow instructions, then that is a reasonable view. Because that is one reasonable view of the record, it supports the trial court's conclusion that trial counsel was not inadequate when choosing not to seek a limiting instruction. A limiting instruction would not have been curative, because the harm of multiple charges could not be cured by severance, was minimized by distinctly severable charges, and was already addressed in the given jury instructions.[4]

On the issue of prejudice, the law requires that petitioner bear a burden of proving more than a *possibility* of prejudice, although he need not prove a probability of prejudice. *Green*, 357 Or at 322. As a corollary, that standard should mean that a court cannot import into the analysis a presumption of prejudice. Yet, I fear, that is what the majority opinion does. The majority opinion adopts the petitioner's argument that, "without a specific limiting instruction, nothing in the instructions that the jurors actually received would have prevented them from considering petitioner's alleged abuse of multiple victims as evidence of a propensity to sexually assault young girls." 307 Or App at 98-99.

To reach that conclusion, the majority opinion infers from a pair of appellate cases the idea that joinder of offenses carries an inherent risk of prejudice, presumptively necessitating the instruction. The majority opinion is careful to say that that is not necessarily true in every case. Nevertheless, the majority opinion still operates, in effect, as if the presumption of prejudice is the default mode. As a consequence, the majority opinion makes it the state's job to prove the absence of prejudice. In effect, petitioner's burden of proving prejudice has been reversed. *Compare id.* at 100 (not suggesting a defendant is prejudiced anytime multiple charges are joined), *with id.* at 102 (reading *Miller* and *Green* together, it is apparent that the joinder of charges and failure to request a limiting instruction can result in

---

[4] To conclude otherwise, as does the majority opinion, would seem to make the absence of a limiting instruction reversible error in every criminal case and every post-conviction case with multiple charges. That is because this case does not turn on unusual or rare facts. This case involves common and simple facts. Thus, there is nothing to isolate the majority's opinion to an unusual circumstance. There is nothing to prevent this case from serving as a universal precedent.

prejudice), *and id.* at 102-03 (the Supreme Court has repeatedly recognized the potential for jurors to misuse evidence in joint trials).[5] The majority opinion does not point to the record of the case to show how petitioner carried his burden of proving something "more than a *possibility* of prejudice." *Green*, 357 Or at 322 (emphasis added). Instead, the majority opinion makes the same assumption we would, in a different setting, when reversing a case where evidence of "prior bad acts" has no proper purpose in the case, leaving a jury to regard evidence of other acts as related to the charged acts. *See, e.g.*, *State v. Pitt*, 352 Or 566, 293 P3d 1002 (2012) (the trial court erred when it admitted prior bad acts evidence regarding defendant's uncharged sexual contacts). The majority opinion generalizes from that fear borne of a similar factual setting but significantly different *trial* setting. The majority opinion assumes that a jury will naturally do wrong. In my view, that is a pessimistic and unwarranted presumption of prejudice. A presumption of prejudice is not implied in either case on which the majority opinion relies.

The first case, with some similar facts, stands for other principles. In *Green*, the petitioner was charged with multiple sex offenses against nine victims. 357 Or at 303. His trial counsel failed to move to sever the charges and failed to request a limiting instruction. *Id.* at 304-05. The jury convicted on all charges. *Id.* at 307. In the ensuing post-conviction case, petitioner's trial counsel did *not* indicate explicitly whether he had evaluated whether to give a limiting instruction.[6] *Id.* Instead, he complained, "I don't know what [post-conviction] counsel is saying." *Id.* at 307-08. The post-conviction court did not decide whether trial counsel had provided constitutionally deficient performance;[7] instead, the court decided that the petitioner had failed to prove that the absence of the instruction *would* have caused prejudice. *Id.* at 321.

---

[5] Similarly, when offering to "prove" prejudice, petitioner cited *State v. Pitt*, 352 Or 566, 582, 293 P3d 1002 (2012), but *Pitt* is a case about prior bad acts, not about a limiting instruction.

[6] In our case, we understand that trial counsel *did* consider whether to request a limiting instruction.

[7] In our case, the post-conviction court determined that trial counsel's performance was not an unreasonable exercise of professional skill and judgment.

On appeal, we mistakenly decided that the failure to have requested a limiting instruction meant deficient performance just because there was "no downside" to requesting the instruction. *Id.* at 311. We decided that petitioner proved that the deficiency could have caused prejudice because, in the absence of an instruction, the jury "may well have" made improper inferences about petitioner's propensity to commit sex offenses. *Green v. Franke*, 261 Or App 49, 63, 323 P3d 321 (2014), *rev'd*, 357 Or 301, 350 P3d 188 (2015). On review, the Supreme Court rejected our "no downside" approach as incomplete when considering the reasonableness of counsel's performance for failing to request an instruction. *Green*, 357 Or at 319-20.

Also, the Supreme Court rejected the trial court's standard of prejudice—*i.e.*, that counsel's inadequacy *would* have affected the result. The Supreme Court held, as recounted above, that the standard of proof requires more than a possibility of prejudice although not as much as a probability of prejudice. *Id.* at 322-23. The Supreme Court remanded the case to the post-conviction court because that court had neither decided the deficiency of counsel nor employed the proper standard of proof of prejudice. *Id.* at 321, 323.

In saying all that, the *Green* court did not indicate that there is a presumption of prejudice to be substituted for a petitioner's burden of proving prejudice. To be sure, the court did review ORS 132.560(3) and note that, if, by joinder, a defendant is "substantially prejudiced," then a trial court may require separate trials or provide whatever other relief justice requires. *Id.* at 316. The court also observed that trial courts have the authority to give limiting instructions to require juries to consider evidence only for a particular purpose or in regard to a particular element. *Id.* That observation flows naturally from the provision in ORS 132.560(3) that a trial court may provide whatever relief justice requires. That observation did not indicate that a limiting instruction is *required*, nor necessary in every case. Indeed, the *Green* court remanded in order that the post-conviction court could examine whether trial counsel's failure to request a limiting instruction meant counsel performed unreasonably in light of all the circumstances

of the trial, including the petitioner's defense strategy. *See id.* at 320 (listing issues unaddressed below). In other words, the *Green* decision did not declare joined charges invariably prejudicial without a limiting instruction, and it certainly did not create a presumption of prejudice to be invoked in the absence of a limiting instruction.

The second case, *Miller*, is more helpful, although different. It is not a post-conviction case; it was decided on direct appeal of convictions on sex offenses involving two victims. 327 Or at 624. It did not involve a limiting instruction; it involved a trial court's denial of a motion to sever the trial of joined charges. *Id.* It addressed prejudice in the context of severance, not in the context of post-conviction relief. Even so, *Miller* is instructive for what it says about prejudice involving joined charges and what it says about evaluating every case individually on its own facts rather than categorically with presumed prejudice.

At the time of the events in *Miller*, the joinder statute was essentially the same as today's statute but for one significant difference. At that time, ORS 132.560(3) (1991) did not require a party to be "substantially" prejudiced as the standard for granting separate trials or other relief. The legislature inserted the word "substantially" *after* the *Miller* decision. *See* Or Laws 1999, ch 1040, § 17. In its time, the *Miller* court considered prejudice in an everyday sense when it evaluated the defendant's argument that "prejudice is inherent in the presentation to a single jury of multiple unrelated charges involving violence or sexual assault." 327 Or at 625. The court examined what the legislature meant by the term "prejudiced," observing that the "term 'prejudice' is a familiar legal standard[,]" and adding that "[i]t appears in a number of statutes and rules." *Id.* at 627. In saying so, the court was not speaking narrowly of prejudice as assessed under just the joinder statute; rather, the court was speaking of prejudice in the same sense as we speak of prejudice at risk in the absence of a limiting instruction.

The state insisted that the court should demand more than just plain prejudice from the joinder of charges in order to warrant separate trials or to find error when trial court refuses to sever. *Id.* at 628. The Supreme Court,

however, refused to imply the word "substantial" into a statute that, at the time, the legislature had not used. *Id.* Everyday prejudice was the standard in *Miller*. For that reason, the court's discussion of prejudice from joined charges is helpful here.

The defendant had argued, among other things, that "real prejudice" results when "the accusatory instrument charges multiple unrelated offenses involving violence or sexual assault" and when "the court would not otherwise admit evidence of each offense under OEC 404(2) or (3) * * * in separate trials." *Id.* at 629. The Supreme Court responded:

> "We disagree with defendant's categorical approach to the question of prejudice under ORS 132.560(3). Courts apply few legal standards that are more case specific than the standard of prejudice. The statute contemplates that the court will engage in each case in a practical analysis of the prejudice entailed in joinder of multiple offenses for a single trial and will not conclude automatically that prejudice exists in every case that involves allegations of sexual misconduct, violence, or multiple victims. Allegations of that sort, considered in combination with other circumstances described in the motion, may justify the conclusion that prejudice exists in a particular case. But, in our view, that conclusion must flow from a case-by-case assessment rather than the 'one size fits all' approach that defendant advocates."

*Id.* From this, we should recognize that the Supreme Court does not countenance a categorical approach to prejudice, and it does not countenance a presumption of prejudice from the joinder of charges against separate victims in a single trial. That is because the determination of prejudice is "case specific" involving a "practical analysis." *Id.*

The defendant had argued, in part, that the joined charges caused a prejudicial effect that outweighed any probative value, contrary to OEC 403.[8] *Id.* at 629-30. The

---

[8] OEC 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

court rejoined that, unlike OEC 403, which turns on the danger of *unfair* prejudice, "the standard of 'prejudice' in ORS 132.560(3) is not qualified." *Id.* at 633. Again, ordinary prejudice is the standard. The court acknowledged that, in the abstract, there was at least some danger that multiple charges might tempt the jury to decide the cases on the basis of the defendant's propensity to commit crimes. *Id.* at 634. However, the evidence was also probative of the defendant's guilt of the charged offenses, and the defendant admitted that the two incidents involved few similarities and had no logical or factual connection. *Id.* The Supreme Court held that the trial court had not abused its discretion to allow the evidence of the offenses in a joint trial. *Id.*

It is true that the *Miller* decision, in discussing a motion to sever, refers to the question whether joinder of offenses is "likely" to cause prejudice. *Id.* at 629. The existence of prejudice, regardless how much, is the concern. The decision does not indicate that prejudice must be "likely" *to affect the verdict* in order to warrant severance or other relief. By comparison, post-conviction relief requires proof of prejudice that is more than a possibility while less than a probability *of affecting the verdict*. The standards might seem different at first glance, but they may harmonize. On close examination, we can see that *Miller* does not conclude with language that prejudice there was "unlikely." *See id.* at 631-34. Much to the contrary, *Miller* expressly rejected the state's argument that the defendant must be "substantially" prejudiced. *Miller* stressed that the "prejudice" at issue there "is not qualified." *Id.* at 633. Any old prejudice would suffice. None was shown there under circumstances not much different than here. As a result, *Miller* is not nearly as foreign as the majority opinion suggests.

*Miller* makes several determinations that should guide our decision in this case. First and foremost, we cannot employ a "categorical" approach to prejudice. *See id* at 629. A presumption of prejudice from the mere joinder of charges is exactly that. To assume that the absence of a limiting instruction "allows" the jury to make improper inferences categorically assumes evidence will not be used for its proper purpose. In addition, *Miller* demonstrates that, when multiple offenses are tried in a joint trial, the risk that

a jury might misuse the evidence is not self-evident when the evidence relates to distinct incidents with no logical or factual interconnection. *See id.* at 634. *Miller* should assist our conclusion that the post-conviction court was correct in determining that petitioner had failed to prove that prejudice from the absence of a limiting instruction was something more than a mere possibility.

As in *Miller*, the prosecution here did not argue to the jury that the charges involving one victim could be used to support the charges involving another victim. The charges were distinct, they involved separate times and places, and the witnesses' accounts were not interrelated or interdependent. We are supposed to believe the jury will follow instructions. The jury was instructed not to let bias or prejudice influence their assessment of the charges. The jury was specifically instructed not to consider any evidence of defendant's prior crimes for the purpose of drawing an inference that he may be guilty of the offenses charged. As the trial court noted, the jury's verdict evidenced separate consideration of the offenses, rather than a uniform treatment of the charges together. Their assessments of the charges as to the two victims were different, and their assessment of the rape charge was acquittal. The verdict demonstrated that the jury did not treat defendant as "guilty of one, guilty of all."

Taking everything into consideration, the law and the record support the post-conviction court's conclusion that petitioner failed to carry his burden of showing something *more* than a *possibility* of prejudice. The mere potential for prejudice is the most that the majority opinion can surmise. That is not supposed to be enough.

Given a different understanding of the standards for reasonable performance and proof of prejudice, I respectfully dissent with regard to our decision to reverse the post-conviction judgment on the second assignment of error.